Chief Justice Robertson
delivered the Opinion of the Court.
This writ of error brings up for revision, a judgment by default, rendered, for one hundred dollars, in favor of the defendant in error, on a declaration in debt, alleging that the plaintiff in error, by a writing obligatory, “promised, agreed, and bound himself to pay the said “ plaintiff (defendant here) the sum of one hundred dol- “ lars — to attend the Kentucky Legislature, to get a bill “ passed legalizing his, the said defendant’s, (plaintiff here) “ marriage with Harriet Johnson, and divorcing (him) “from his former wife;” and averring that he (defendant here) “ did attend the Legislature of Kentucky for “ the purpose of getting said marriage with said Harriet' “ Johnson legalized, and to divorce said defendant (plain- “ tiff here) from his former wife, by an act of the Legislature;” and also, that, “at his instance and request, “ the Legislature did pass an act (approved by the Gov- “ ernor,) legalizing said marriage with said Harriet John- “ son and divorcing the defendant (in the court below) “ from his former wife-by which he is shielded from “ any liability whatsoever by reason of his said marriage “ with said Harriet Johnson, having married the same “ without being divorced from his former wife.”
The only question is whether the contract, as thus described, appears, upon its face, to have been illegal, and therefore should not be enforced by law.
The law will not aid in enforcing any contract which is illegal, or the consideration of which is inconsistent with public policy, sound morality, or the integrity of the domestic, civil, or political institutions of the State. Hence, marriage brokage contracts, and agreements for smuggling or for evading the revenue laws, or for selling an office, or for exercising influence to procure an of *367 fice for another, have not, according to the common law, -any legal obligation. Marriage being, as a social relation, fundamental and essential in every organized society, is juris publici, and therefore, it is the obvious policy of every State that all contracts of marriage should be perfectly voluntary and free from extraneous influence. - It is also the interest of the State to have, in all its places of public trust, those best qualified to fill them well, and to guard the appointing power against every influence w'hich may tend to prevent the best selection. And therefore, as the law should not enforce a contract inconsistent with itself, or with public policy, it will not impart any legal obligation to a contract for procuring a marriage or an office, or for exercising any influence to such an end. •
Counsel might be employed, without impropriety, to prepare and present a petition to the Legislature; to make an exposition of facts, or to advocate the adoption of a measure, before the Legislature, orany of its committees ; & a contract for compensation for such services, would be fair and legal. And—
Held that a declaration averring, in substance, that the def t bound himself to pay to the pltf $100, to attend theKy. Legislature, to get a bill passed legalizing the defendant ’ s last marriage, and divorcing him from his former wife, and averring, also, that the pit f did attend &c. and that, at his instance and request, such an act was passed and approved, whereby the defendant was released from all liability &e.-does not describe a contract for a contingent fee nor one so clearly malum, in sc, that this court can pronounce it void, and reverse a judg t rendered upon it, by default,
*367 Upon the same principle it has been decided in England, and in Kentucky, that an agreement, by one convicted of a public wrong to pay another for obtaining a pardon or remission, is illegal, and therefore will not be enforced by the law. 2 Espinasse's Rep. 253, and McGill's Administrator vs. Burnet, 7 J. J. Marsh. 640.
It was decided in Lampleigh vs. Brathwait, (Hobart’s Rep. 239,) that a promise by Brathwait to pay Lampleigh one hundred pounds in consideration of his having previously, at his request, performed service for him, “in “riding and journeying, at his own charges, from London “to Roiston,when the King was there, and to London “ back, and so to and fro from Newmarket, to obtain “ pardon for (Brathwait) for a felony” — might be enforced in an action of assumpsit. But in that case, it not only did not appear that any thing had been done but the riding in the character of a mere messenger, as just recited, but the only point considered by the Court, was whether the promise, made after the riding, at the defendant’s request, was gratuitous, or was, in judgment of law, as binding, in consequence of the request, as it would have been had it been made before the performance of the service. And the question whether there was- any illegality or impolicy in the consideration, if involved in the facts of the case, was evidently not noticed by either the bar or the court.
*368 We do not, therefore, consider the case in Hobart, inconsistent with those referred to, in Espinasse and J. J. Marshall, supra. The principle of these last decisions is* in our opinion, sound and consistent; it is that, for obvious reasons, the tendency of an agreement by one person, to pay another for obtaining, or trying to obtain, a pai’don for him, is directly in conflict with the pure, intelligent and prudent exercise of the pardoning power; and therefore such contracts, although some times they may be perfectly harmless, should be discountenanced by a general rule of law.
In DeCosta vs. Jones, Cowp. 729, it was decided that a wager (in itself lawful,) was illegal when made concerning the sex of a particular person; because such a bet would tend to incite indecent enquiries and observations, and was therefore inconsistent with the proper security of persons and decorum of society.
In Atherfold vs. Beard, 2 Term Rep., 610, it was decided, “ that a wager respecting the future amount of any “ branch of the public revenue was illegal, because it “leads to an improper discussion, and is contrary to “ sound policy. ”
It was also decided in Allen vs. Hearne, 1 Term Rep., 56, that a wager on an election was illegal, because its obvious and direct tendencies, being inconsistent with the purity and independence of the elective franchise, were subversive of the “fundamental principles of the British Constitution;” and the same principle has been often recognized, a fortiori, in these United States.— Brun vs. Riker, 4 Johnson's Rep., 426; Vischer vs. Yeates, 11 Ib. 23; Yeates vs. Foote, 12 Ib. 1; Dennis vs. Cook, Ib. 376; McCallister vs. Huffman, 16 Serg. & Raw., 147; Wroth vs. Johnson, 4 Har. McHen., 284.
And in Philips vs. Ives (1 Rawle, 56,) it was decided that a “ wager, whether Napoleon Bonaparte would, “ within a specified time, be removed from the Island of “ St. Helena,” was inconsistent with public policy, and therefore void.
Without intending to express either our concurrence in all of the foregoing cases, or our dissent from any of them, we have referred to them only with the view of *369 showing some of the general principles which have been recognized, and the manner in which they have been applied to particular cases, without special regard to their intrinsic character or object, for the purpose of preserving, from any assault — open or covert, direct or indirect — the public morals, public faith and public interest.
Do those principles, or any of the foregoing decisions, apply to this case?
It is certainly all-important to just and wise legislation, and therefore to the most essential interests of the public, that the Legislature should be perfectly free from any extraneous influence which may either corrupt or deceive the members, or any one of them. And doubtless there may be, among the members themselves, enough of persona] influences by and upon each other, without inviting the aid of others, by enforcing contracts for compensation for their influence, exerted, not from patriotic or public motives, but from those which are altogether mercenary and selfish. And certainly the law should not help to compel the payment of a fee to any man, whether of great or of little influence, for his personal solicitations in favor of the enactment of any law whatever. Nothing could be more suicidal or unwise than a contrary doctrine. A lawyer may be entitled to compensation for writing a petition, or even for making a public argument before the Legislature, or a committee thereof; but the law should not help him, or any other person, to recover a fee for exerting any personal influence, in any way, in any act of legislation. In such a case, he must rely on the honorary obligation alone.
Then, if McCann exerted, or agreed to exert, any personal influence, foul or fair, in procuring the legislative acts described in his declaration, we have no doubt that the note, on which he procured the judgment now under revision, possessed no legal obligation.
But unless the fact that some such exertion of influence was a part of the consideration of the note is clearly deducible from the terms of the contract, or the averments in the declaration, we should not judicially decide that the contract was illegal. There having been no *370 plea or defence in the Court below, the only clue to a decision of the case is furnished by the declaration and note as described in it. And had these shown that the fee, or any portion of it, depended on the passage of the legislative acts, or either of them, we should be clearly of the opinion that the contract should be deemed illegal and void; because a contingent fee is a direct and strong incentive to the exertion of not merely personal but sinister influence upon the Legislature; and therefore, public policy forbids the legal recognition of any such contracts — upon the same principle on which it interdicts wagers on elections, and contracts for procuring pardons.
Contingent fees for professional services in a court of 'justice have been, when not champertous, tolerated by usage and common law; and their validity depends on principles not applicable to the like fees for exertions made with a Legislature or a Governor.
It does not, however, appear in this case, that the fee was contingent. Nor do the terms of the contract, as reduced to writing, and now appearing to this Court, ■necessarily imply that McCann was expected or required to do any thing that he might not lawfully have done; or that he had any personal or pecuniary interest ‘in the success of the application to the Legislature.— And the unnecessary averment that the legislative acts were passed at his instance and request, does not, we think, ■necessarily import that he did more than present the ■petition, and perhaps prepare the facts and make a public argument.
We are therefore, though doubtingly, inclined to the ■conclusion that, as jealous as the law and its judicial organs should ever certainly be of such contracts as that we are now considering, there is scarcely enough in the record before us to authorize this ■ Court to decide, as a 'matter of law, that the note on which the judgment was rendered, was given for an illegal or vicious consideration, and was therefore not legally obligatory.
. Wherefore, it is considered that the judgment by default be affirmed.