## HUNT v. TEST.

1. T. undertook to proceed to Washington City, "and to do all in his power to prevent the confirmation of Eslava's claim, or to obtain the passage of some act, or else have it inserted in the confirmation of Eslava, in such manner that the land office department may issue patents to said G. & H. for the land embraced within said claim, and for which they have the government title"—Held, that it was not unlawful to solicit Congress in behalf of private land claimants, as the acts of Congress on this subject, though laws in form, were in effect judicial decisions—That the undertaking " to do all in his power," did not on its face import the use of unlawful, or improper means, and that the contract was not void as being against public policy—Whether such a contract, to solicit the passage of a public law, would be valid, *Quere.*

2. T. agreed with H. for a reward, dependent upon his success, to attend at Washington city, and do certain things, in reference to a controversy about a private land claim depending before Congress, between H. & E., T. attended two sessions of Congress, when the matter was compromised between E. & H.—Held, that if T. was not privy to the compromise, he could not be required to prove that he could have performed his undertaking, as that had been rendered impossible, by the act of H. If T. assented to the compromise, and did not abandon his claim for services rendered, the law would imply a promise from H., to pay the value of the services, to be admeasured by the contract, but could not exceed the amount he had stipulated for.

3. To a plea of *non assumpsit*, the defendant appended an affidavit, " that the paper sued upon by the said John Test is not his act and deed"—Held, that this was sufficient to put the execution of the instrument sued upon in issue, though it was not a sealed instrument.

90

Error to the County Court of Mobile.

Assumpsit by the defendant against the plaintiff in error. The declaration consists of two special counts, framed upon an alledged contract in writing, and also the common counts. The defendant pleaded non-assumpsit, and also the same plea with an affidavit, " that the paper sued upon by the said John Test," is not his act and deed. This plea the plaintiff demurred to, and the Court overruled the demurrer. The defendant also demurred to the first and second counts of the declaration, which was overruled by the Court, and upon the verdict of the jury upon the issues of fact, a judgment was rendered for the plaintiff.

Pending the trial, as appears from a bill of exceptions, the plaintiff introduced an instrument of writing, in the following words :

. " Memorandum of an agreement between John Test of one part, and Jonathan Hunt, and A. H. Gazzam of the other part. Said Test agrees to proceed to Washington City, and do all in his power to prevent the confirmation of a large claim by the heirs of Eslava, for 5,787 acres, which they are now endeavoring to urge through Congress. Also, he agrees, if he can, to obtain the passage of some act, or else have it inserted in the confirmation of Eslava, in such manner that the land office department may issue patents to said Gazzam and Hunt, for the tracts embraced within said claim, and for which they have the government title. Said Gazzam and Hunt hereby agree to pay said Test, three hundred dollars, and to pay him two hundred more in Washington City, and in case their titles are quieted by the passage of any act, or law, so as to give them their patents, or so as they can get their patents, and be secure from Eslava's claim, then said Gazzam and Hunt to pay said Test two thousand dollars, making his fee for full success, twenty-five hundred dollars.

A. H. GAZZAM, <em>for himself and</em><br>JONATHAN HUNT,<br>JOHN TEST."

The defendant, by his counsel, objected to the introduction of this contract as evidence, because it varied from the contract declared on, and also, because no evidence of authority was produced, authorizing Gazzam to make the contract for Hunt. The

Court overruled the objection, and permitted the evidence to be read to the jury.

The plaintiff also proved by witnesses, that he attended upon Congress during both the sessions of the 26th Congress, and whilst there, was actively engaged in attempting to obstruct the passage of a law, confirming the title of the heirs of Eslava to a tract of land in the city of Mobile for 5,787 acres, referred to in the above contract. That he submitted in 1840, to the committee on private land claims in the Senate, before whom this claim was pending, a written argument of between thirty and forty pages, to endeavor to show that this claim ought not to be confirmed by Congress, and was also active in his endeavors to persuade members of the Senate to oppose the claim. That Hunt and Gazzam had land falling within the limits of the Eslava claim, and were both interested in defeating it. That Hunt, during the winter and spring of 1840, had numerous and long consultations with plaintiff about the claim.

He further proved, that the act of Congress of 3d March, 1841, being the 15th chapter of the private acts of that session, was the conclusion of the action of Congress, on this subject, and that the act was agreed to by all parties, as a compromise; which act, with the report referred to in it, 5 American State Papers, 623 Public Lands, is a part of the bill of exceptions. M. Eslava also testified to the efficiency of his services, that he made all the mischief in his case. The interest of Gazzam embraced 1,600 acres, and that of Hunt several hundred acres, worth at that time from $50 to $75 per acre.

The defendants introduced the testimony of King & Wilson, that they had been retained by Hunt, to oppose the confirmation of Eslava's claim, and paid by him. That they knew of the plaintiff's opposition to Eslava's claim, and supposed that he was retained by Gazzam, &c. Mr. Smith testified that Hunt's interest in the land was 671 acres, purchased from Gazzam, in 1838, for $9,000, with Gazzam's deed of warranty. That he, Smith, was the confidential and general agent of Hunt in Mobile, that Gazzam was not his agent to his knowledge, and proved various other facts, tending to show, that Hunt did not authorize, or know of the contract made with Gazzam. That in 1839, Gazzam was reputed to be embarrassed, made an assignment in 1840, and had

proved insolvent. It was in proof that King & Wilson were land agents, and not attornies at law.

The Court charged the Jury, that the affidavit attached to the plea, did not put the plaintiff on proof of the instrument, and that without regarding the evidence offered impeaching the execution of the instrument offered in evidence, and for want of the proper plea and affidavit, the defendant could not object to the want of authority in Gazzam. That the plaintiff was entitled to recover on the contract, if he had performed the conditions. That the act of Congress produced in evidence, was not the fulfilment of the condition of the contract, but if the plaintiff had been ready to endeavor to procure the passage of the act of Congress specified in the contract, and had been prevented from attempting to do so by the compromise between the parties, he was entitled to recover, as if the conditions had been performed. That if the compromise was made by the consent, or without objection from the plaintiff, the contract was to be considered out of the question, and that then the plaintiff might recover upon the general counts, and the jury might go beyond the provisions of the contract, in fixing the value of the plaintiff's services, if they thought them worth more.

The defendant's counsel asked the Court to charge, that to enable the plaintiff to recover the two thousand dollars mentioned in the contract, he must prove that he was able and willing to procure the act of Congress specified in the contract, or to enable Hunt and Gazzam to get their patents, and be secure from Eslava's claim. This the Court refused, and charged that a readiness to endeavor to procure the act, was all that was necessary.

They further moved the Court to charge, that to enable the plaintiff to recover on the contract, in consequence of a compromise, the plaintiff must show that it was against his consent, and that he could have performed the conditions of the contract; which the Court refused, so far as it was inconsistent with the charge previously given.

Further, that upon all the evidence, the plaintiff cannot recover of the defendant, for the non-fulfilment of that term of the contract which provides for the payment of $2,000, which the Court refused.

Also, that there is no evidence before the jury, showing any

ability on the part of the plaintiff to fulfil, or the fulfilment of that term of the contract, that provides for the security of the titles of Hunt and Gazzam, and without such proof he cannot recover, which the Court refused.

To all which the defendant excepted, and now assigns for error—

1. The judgment on the demurrer to the declaration.

2. The matter of the bill of exceptions.

CAMPBELL, for the plaintiff in error, made the following points: The declaration consisted of special and common counts, and as to the latter, it was clear the instrument required proof. [3 Stew. 48.] The objection to the affidavit is not well founded, and could not have been taken after the judgment on the demurrer to the plea. [2 Ala. Rep. 401, 726; 4 Id. 200; 3 Port. 433 422.]

The agreement was invalid, being against public policy, and this question was raised by the demurrer to the declaration. It provides for the use of all the means in the plaintiff's power, to prevent the passage of an act of Congress of a particular description. The use of fair and honorable means, as well as the sly, and subtle acts of electioneering, importunity, intrigue, personal influence, are all within the import of the engagement. The law declares all such contracts void, from their tendency to create an improper, and corrupt interference, with the law making power. [7 J. J. Marsh. 640; 7 Watts, —; 5 Watts & Ser. 315; 6 Dana, 366; 18 Pick. 472; 2 Madd. C. R. 356; 5 Hill's 27; 5 Am. Dig. 144.]

The Court below admitted that the act of Congress was not a fulfilment of the undertaking. There must be either a performance, or an offer to perform, to excuse the non-performance. [Chitty on Con. 274.] But the Court held, that a "readiness to endeavor," was sufficient. Before the plaintiff can recover, if he was prevented by the acts of the defendant from endeavoring to procure the passage of the act of Congress, he must show a readiness to fulfil the condition and perform his contract. [2 Pick. 155, 270; 4 Id. 101; 4 Por. 170; 1 Ala. Rep. 140.]

If the plaintiff consented to the compromise, no right to compensation could arise further than has already been paid. The effect of the compromise is, that the plaintiff, and defendant, mu-

tually surrendered their claims on each other. But the Court even told the jury, that they might assess damages beyond the provisions of the contract. Although it was admitted the contract was not performed, the Court refused to charge that there could be no recovery for the term of the contract promising to pay $2,000. It is also contended, that after an unsuccessful solicitation for two winters, the defendant was justified in compromising. The plaintiff was bound to fulfilment in a reasonable time. [2 Taunton, 325; 20 Eng. Com. Law, 126.]

J. Test, *pro se.* He considered it to be clear law, that what it was lawful for a man to do himself, in regard to his interest, he may employ an agent to do for him. This is, in fact the settlement of a private claim, not the passage of a public law, and in England nothing is more common than for counsel to be employed in the passage of private bills. Nor is any thing more common in Washington city, than for counsel to appear before committees of both houses of Congress in the case of private land claims.

This was a mere private bill, in which neither the people, or the government, had any concern, further than their justice or their bounty were concerned, and the undertaking was not as seems to be supposed, to pervert justice—to accomplish the act by any means, fair or foul; the contract warrants no such interpretation. The legal presumption, until the contrary is shown, must be, that proper means alone were to be resorted to.

The cases cited have but little if any analogy to this case. A promise as an inducement to solicit the executive for a pardon for a convict, evidently stand upon a different footing from the present case. Nor is the case cited from 2 Madd. 356, at all like the present. That was a contract fraudulently to withdraw opposition to the passage of a bill, which was calculated to injure the public. The case cited from 6 Dana, is directly in point against the defendant, so far as the case is any authority.

Authority cannot be necessary to show, that a man may employ an agent to appear before a legislative body, but if it is, a reference to the American State Papers, vol. 1, 1638 to 1721, will show that agents have been employed to solicit the passage of private bills, and have been heard at the bar of the house.

· The affidavit, that the paper sued upon was not the "act and deed" of the defendant, was insufficient to put the party on proof of the execution of the instrument, which was a simple contract. It was not in law or in fact his *act and deed,* and if he had in truth authorized its execution, he could not have been convicted of perjury on this affidavit. An affidavit of the truth of the plea would have been sufficient, but that is not done ; certain facts are sworn to, from which the legal conclusion is drawn, that he did not assume, &c. but the facts do not warrant any such conclusion.

ORMOND, J.—The principal question in the cause is, the legality of the contract, which has been assailed by the defendant's counsel, as contrary to public policy. It appears that M. Eslava was urging on Congress the confirmation of a claim derived from the Spanish government, for 5,787 acres of land in the neighborhood of Mobile, and one Gazzam, and the plaintiff in error, asserted a right to a portion of the same land, which would be prejudiced by the confirmation of Eslava's claim. The undertaking of the defendant in error, was, to proceed to Washington City, " and to do all in his power to prevent the confirmation of Eslava's claim." He also agreed to endeavor to obtain " the passage of some act, or else have it inserted in the confirmation of Eslava, in such manner that the land office department may issue patents to said Gazzam and Hunt for the land embraced within said claim, and for which they have the government title."

It is very clear that a contract by which one engaged to procure, or to endeavor to procure the passage of a law by sinister means, as by personal influence to be exerted with the members of the legislature, by urging any false consideration of public policy, or by the concealment of any thing necessary to be known to the formation of a correct judgment, would be contrary to public policy, and therefore void. The legislature should act from high considerations of public duty, and the State has a deep interest in protecting the legislative body against all assaults, or solicitations, which may hazard either the purity or wisdom of its acts.

- It is strongly urged, that although the contract in this case does not in terms stipulate for the employment of sinister means, it

does provide, that the agent shall do all in his power to accomplish the object in view; that this includes improper, as well as proper means, and that the necessary tendency of permitting such solicitation, is to expose the legislative body to improper influences. Doubtless there is great force in this view of the matter, as it would in most instances be difficult, if not impossible, to ascertain, whether the agent was exerting a personal influence, or endeavoring to convince the mind—whether he was giving the results of his own unbribed judgment, or whether he was merely acting the part of an advocate. We do not however intend to pass upon this question, as a general proposition applicable to all laws, in which the public have a direct or immediate interest, because we think the law to be obtained in this case, is clearly distinguishable from such general laws.

The acts of Congress confirming incomplete titles within the territory acquired from other nations, though laws in form, are in their essence judicial determinations. It is the judgment of the nation, upon the facts ascertained, appealing to its honor, and sense of right and justice. To a proper decision, it is necessary that the facts should be ascertained, and the law understood as applicable thereto. It is no impeachment, either of the diligence, or wisdom of the national legislature, that it should devolve on others, the collection of the facts, or avail itself of the knowledge and experience of professed lawyers. Such is the habit of all Courts, and such in effect is Congress, in the settlement of these questions. It would doubtless frequently happen, as was the fact here, that the claims of different individuals to the same land would come in conflict, and in such cases it appears to us, that the opportunity for a correct decision would be much greater, after all had been said in favor of each claim by those interested in making the most of it, than if Congress had been obliged to work out the problem, unaided by the ingenuity of interested counsel, and such appears to be the course pursued at Washington, as well as at London, in such cases.

The contract on its face does not import that any unfair, or improper means were to be resorted to. *To do all in his power,* evidently means to exert his utmost diligence and ability in establishing the claim of his employer, and is what the law would have implied, if it had not been expressed.

The cases cited, do not bear out the argument founded upon

them. There is evidently a broad distinction between soliciting a pardon from the executive, and such a case as the present. The pardoning power is a high trust lodged with the executive, to be exercised in proper cases by him, on the part of the State as its representative. The opinion of enlightened and virtuous individuals, as to the propriety of extending mercy in a given case, would always have great weight with the executive, as an exponent of the wishes of the State, and it is a fraud upon the executive if this opinion is not expressed in good faith. But it is obvious, if one is hired to express this opinion, or by operating on the sympathy of others, to induce them to express it, it should have no weight whatever, as its tendency, instead of informing, would be to mislead.

Neither is the case of the Vauxhall Bridge Co. v. Earl Spencer, 2 Madd. C. R. 356, a case in point. In that case, an act had passed the House of Commons for the erection of a bridge over the Thames, with a clause giving a compensation to the proprietors of the Battersea Bridge, for the probable injury they would sustain by the erection of the new bridge. Objection was made in the House of Lords to this clause, making compensation. Upon this, to prevent delay, or the possible rejection of the bill, nine persons, forming a committee of the subscribers of the new bridge, secretly agreed to place a sum of money in the hands of trustees, to be paid to the proprietors of the Battersea Bridge. The clause of the bill was stricken out, and the bill passed. A bill was afterwards filed in Chancery by the subscribers of the new bridge, to prevent the money from being paid over. The Vice Chancellor held, that this secret agreement was a fraud upon the legislature, and the public, and therefore void, as against public policy. That by this secret agreement, the legislature were induced to give their sanction to the bill, supposing the claim to compensation had been given up, when but for this artifice, they might have refused to pass the bill.

It is obvious, the principle of this case has nothing to do with the case at bar. Nor is the case of Wood v. McCann, 6 Dana, 366 more in point, where the Court affirms, that an unconditional promise to pay a sum of money, in consideration of the obligee attending the legislature of Kentucky, and procuring the passage of an act legalizing the marriage of the obligor, and divorcing him from his former wife, was valid; it not appearing that the

act was to be obtained by the personal influence of the obligee, or that any improper means were to be resorted to. This case, indeed, goes far beyond any principle intended to be asserted here.

Without pursuing this interesting question any further, we are satisfied, that in the present instance the contract is not on its face opposed to public policy, and should be upheld.

It appears that an act was finally passed, as a compromise between the parties interested, and the Court ruled, that as the condition precedent was not performed, the plaintiff could not recover upon the contract, but that if he had been *ready to endeavor*, to perform it, and was prevented by the act of the other party, he was excused from the performance of the condition. That if the compromise was made with his consent, the contract was to be considered as abandoned, and then he could recover upon the common counts, what his services rendered were worth, although it might exceed the two thousand dollars he had stipulated for.

It is certainly clear law, as a general proposition, that an offer to perform or do an act, which is prevented by the party in whose favor it is to be done, or performed, is, in law, equivalent to a performance, or rather is a valid excuse for not performing it. The undertaking of the plaintiff was to prevent, if practicable, the confirmation of Eslava's claim ; if that could not be effected, then to procure the insertion of a clause, that patents should issue to the defendant, and Gazzam, for the land they claimed within Eslava's tract—or to accomplish the same thing by an independent act. It appears that during a protracted contest, extending over two sessions of Congress, the plaintiff succeeded in preventing the unqualified confirmation of the claim of Eslava, and it would be most unjust that the defendant, by a compromise with the adverse party, should snatch from the plaintiff the fruits of his labor, and deprive him of the power of performing his contract. It is urged in argument, that to show that he was injured by this interference, he must make it appear, that he could have fulfilled his engagement. His contract was to " do all in his power," to produce a certain result, and if successful in producing that result, he was to receive the stipulated reward. Now, it is apparent, that the plaintiff cannot prove that he could certainly have produced this result, which depended upon the passage of an act of Congress. All therefore that he can, from the

Hunt v. Test.

nature of the case, be required to prove, is, that the matter was in progress, and that a successful termination might reasonably have been expected. It does appear from the testimony, that the services of the plaintiff were efficient, as M. Eslava himself testifies, that the plaintiff " made all the mischief in his case ;" that is, prevented his obtaining an unqualified confirmation. Nor can the defendant object, that the plaintiff does not prove unequivocally, that he could have performed his contract, when the inability to make such proof is caused by his own act. He has himself produced the necessity of substituting probability for certainty, and cannot complain of it.

Thus far, the case has been considered, as if the defendant had by his own act terminated the controversy between himself and Eslava, by the compromise, but it was also put to the jury upon the hypothesis, that the plaintiff had consented to the compromise.

The effect of this consent, if given without any other stipulation, was clearly a rescission of the contract between the plaintiff and defendant, as it rendered it impossible for the former to perform it ; assuming what is indeed admitted that a different result was thereby produced, from that which was to entitle the plaintiff to the compensation agreed on. But although the contract was rescinded, so far that the defendant could not insist on its performance as a condition precedent, it must be looked to for some purposes, otherwise the services of the plaintiff would be gratuitous. He cannot prove they were rendered at the instance of the defendant, but by the contract, and although as there was no abandonment of these services, at the time of the compromise, the law will imply a promise to pay their value, no presumption can arise of a promise to pay more for partial, than was considered by the defendant himself adequate compensation for complete success ; and it would be strange if the compromise was more beneficial to the defendant than the full consummation of his wishes. We think therefore, under the circumstances of this case, the implied promise, is to pay the value of the services actually rendered, to be admeasured by the contract. [Green v. Linton, 7 Porter, 133 , Haywood v. Leonard, 7 Pick. 181.]

The question argued here, that the contract was to be performed in a reasonable time, and that the defendant had the right

to put an end to it, if the consummation was unreasonably delayed, does not arise upon the record.

The remaining question arises upon the pleadings and evidence, relating to the execution of the contract. The defendant pleaded *non-assumpsit*, with an affidavit, "that the paper sued on by the said John Test, in the above cause described, and now pending in the County Court of Mobile, is not his act and deed." To this plea, as appears from the minutes of the Court, a demurrer was interposed by the plaintiff, and overruled, whereupon he took issue upon the plea. In the case of McAlpin v. May, 1 Stew. 520, it was held, that a demurrer to a plea reached the want of an affidavit, when one was necessary. This decision has been repeatedly recognized since. [McWhorter v. Lewis, 4 Ala. Rep. 198.] In all cases where, under our statute, or according to our practice, a plea must be verified by oath, the oath is a part of the plea, so much so, that without it, the plea may be stricken out, on motion. [Sorelle v. Elmes, 6 Ala. Rep. 706.] The judgment of the Court then, upon the, demurrer, was a judicial determination of the sufficiency of the affidavit, and whilst that judgment was permitted to stand, it drew after it the consequence, that the plaintiff was required to establish, to the satisfaction of the jury, that the writing sued upon was the defendant's act, in fact, or in law.

Upon the trial, the defendant introduced testimony for the purpose of showing that Gazzam, who had signed the contract on his behalf, was not his agent, and had no authority to execute it in his name. This testimony, the Court instructed the jury, they were not to consider, but they were to regard the execution of the instrument as established. It is clear, that the Court had not the power to instruct the jury as to the effect of the evidence, nor is that contended for here, but the argument is, as it doubtless was in the Court below, that there was no affidavit such as the statute requires, to put in issue the execution of a written instrument, the foundation of a suit. [Clay's Dig. 340, § 52.]

This argument is founded upon the language employed in the affidavit, "that it is not his *act and deed*." According to repeated decisions of this Court, no evidence can be adduced to contradict, either the execution in fact of any instrument, the foundation of a suit, or its binding efficacy in law as his act, but under a plea putting the fact in issue, supported by affidavit. [Martin v.

Dortch, 1 Stew. 479; Winston v. Moffat, 9 Porter, 523, Lazarus v. Shearer, 2 Ala. Rep. 718; Sorelle v. Elmes, 6 Id. 706.] When therefore, the defendant denied, that the instrument declared on was his act, he asserted that Gazzam had no authority to sign it in his name. It is true, he adds it is not his "deed," but this cannot vitiate what precedes it, nor indeed are we sure, that it is proper to consider this word in its technical sense. This affidavit was made in *pais*, and it should rather be construed in its popular sense, and so considered, the term *deed* simply means an act, or fact, and is a word of most extensive use, and import. It is impossible to doubt the intention of the party, as he says, "the paper sued on by the said John Test, in the above case, &c., is not his act, and deed," and if he has sworn falsely in this matter, is guilty of perjury, and may be punished.

If therefore it could be considered, that the effect of this charge was to set aside the previous judgment on the demurrer to the plea, and to render a judgment sustaining it, still the Court erred, as in our judgment the affidavit was sufficient, to put the execution of the paper sued upon in issue.

These views render it unnecessary to consider the other question argued at the bar. Let the judgment be reversed, and the cause remanded.

Judge GOLDTHWAITE not sitting.