C. C. COLE, Appellant, v. THE BROWN-HURLEY HARDWARE COMPANY, Appellee.

**Contracts:** AGREEMENT TO INFLUENCE OFFICIAL CONDUCT. Courts will not hesitate to declare void a contract which clearly contemplates corrupting or improperly influencing the official conduct of a public servant; but before doing so, thus permitting one who has received a fair consideration for his promise to escape its performance by asserting the invalidity of his own agreement, such defect must be clearly shown.

**Same:** CONTRACTS BETWEEN LANDLORD AND TENANT. The agreement of a landlord in a contract of lease covering a business building located in a city, to secure the laying of a railway track to the door of a building, thus rendering its use much more valuable, is not void because implying the use of improper influences with the city council to obtain permission to construct the same; since, in the absence of any language in the agreement indicating a corrupt intent the good faith of the parties will be taken for granted and it will be presumed that such permission had already been obtained: but even if it was the understanding of the parties that consent of the city had not been given the agreement would still not be invalid, for not all contracts contemplating future legislative acts are thereby rendered void.

**Same.** Invalidity of an agreement to construct a railway track to the leased premises, when contained in a contract of lease which is not severable, taints the entire instrument and neither party can enforce any of its provisions against the other.

**Same:** *Quantum meruit.* There can be no recovery on *quantum meruit* for service rendered or other considerations furnished under an entire contract which is void as against public policy.

*Appeal from Polk District Court.*—HON. JESSE A. MILLER, JUDGE.

TUESDAY, SEPTEMBER 29, 1908.

Action at law for the recovery of rent alleged to be due for damages for injury to the leased premises. Verdict and judgment for defendant, and the plaintiff appeals.— *Affirmed.*

*W. C. Strock* and *Hager & Powell,* for appellant.

*Henry & Henry,* for appellee.

Weaver, J.— On October 4, 1901, the plaintiff let to the defendant by written lease a certain business building on Court avenue, in the city of Des Moines, for the period of two years, at a rental of $312.50 per month. In consideration of the agreed rent, the plaintiff undertook, among other things, to wire the building for electric lights and make certain changes and repairs therein, and agreed that the building would be supplied with railroad trackage in the alley at the rear thereof not later than December 31, 1901. This action was begun August 27, 1906. The demand of the plaintiff is stated in three counts. The first count sets up the lease, and alleges that defendant took possession thereunder and paid the agreed rent up to May 1, 1903, but failed and refused to pay the rent thereafter accruing up to the end of the term. The second count sets up the use and occupancy of the building by defendant for a period of two years, avers that such use was reasonably worth $312.50 per month, and that defendant has refused to make payment for the period from May 1, 1903, to October 1, 1903. The third count is based on the alleged misuse of the building and fixtures by the defendant and injury resulting therefrom, for which damages in the sum of $2,500 are demanded.

Answering the petition, the defendant admits the lease as alleged by the plaintiff, and admits that it has not paid the rent accruing under said lease during the months of May and June, 1903. It denies, however, that the premises were

of the reasonable value of $312.50 per month, but admits there would be due plaintiff $529.76 for rent for May and June, 1903, except for the counterclaim pleaded by defendant and hereinafter mentioned. As to the last three months of the term defendant alleges that on or about July 1, 1903, plaintiff sold and conveyed the premises, and with it the right to demand and receive the rents, to C. A. McCune, and that on or about said date it surrendered the leased premises to said purchaser. The alleged misuse of the premises and injury to the building and fixtures are denied. In separate counts the defendant alleges the plaintiff's failure to furnish the railroad trackage as agreed, also his failure to wire the building for electric lights, and asks for damages in the aggregate sum of $1,100. To the count of the answer claiming damages for failure to furnish trackage plaintiff demurred on the ground that the contract therefor is against public policy, and therefore void and of no effect. The demurrer was overruled, and error is assigned on said ruling.

In reply to the counterclaim, the plaintiff denies the same, and further pleads that the agreement to furnish railroad trackage to the building could only be carried out by procuring the passage of an ordinance or resolution by the city council permitting said work to be done, and that the agreement was therefore in effect an undertaking to bring sufficient influence to bear upon the city council to secure the desired permission, and is void as being against public policy. This last clause of the reply setting up the alleged void character of the agreement was stricken out on motion of the defendant, and error is also assigned thereon.

At the close of the evidence, the trial court instructed the jury, among other things, that the failure of plaintiff to furnish railroad trackage as agreed was such a violation of the contract that defendant was entitled to recover upon its counterclaim such damages as the defendant thereby sus-

1. CONTRACTS: agreement to influence official conduct.

tained. The jury found generally for the defendant, thereby evidencing its allowance of the counterclaim to an extent equal to the unpaid portion of the rent. While other points were raised on the trial, and are suggested in appellant's abstract, the only one which counsel have argued has reference to the alleged invalidity of the contract to furnish trackage for the use of the rented premises. We shall, therefore, confine our attention to the question thus presented: Is the agreement here under inquiry so clearly against public policy that we should declare it void? The plaintiff, owning a business block, the use of which would be materially more valuable if furnished with railway trackage to its rear door where freight could be received directly from and delivered to the cars without loss of time or expense of drayage, leased the premises for a period of two years at a rental which was fixed with reference to and in consideration of his promise to furnish this convenience. He has not furnished it. So far as the record shows, he has made no request of the railway company to lay its track along the alley, or any application or request to the city council to permit it to be done, and we are called upon to say that his agreement so far involves the possibility of undue influence and improper solicitation brought to bear upon the city council to affect its legislative proceedings that we must hold it void for considerations of public policy. No court should hesitate to declare void any agreement or contract to corrupt or improperly influence the official conduct of any public servant, but it is an equally sound principle which leads courts to declare that before applying such remedy, and permitting one who has received a valuable consideration for a promise fair upon its face to escape its performance by pleading the invalidity of his own agreement, such fatal defect therein must be so clear as to be free from doubt. *Richmond v. Railroad Co.,* 26 Iowa, 202; *Barrett v. Carden,* 65 Vt. 431 (26 Atl. 530, 36 Am. St. Rep. 876). No one has stated the general rule in this respect in clearer or more satisfactory

terms than were employed by the plaintiff in this case when
as a member of this court he prepared the opinion in the
*Richmond* case, above cited.   Speaking of the authority of
the courts to declare a contract invalid on the ground here
contended for, that opinion says:   "But, further than this,
the power of courts to declare a contract void for being in
contravention of sound public policy is a very delicate and
undefined power, and, like the power to declare a statute un-
constitutional, should be exercised only in cases free from
doubt."   This statement has often been quoted with ap-
proval by the courts of other States, and, so far as we are
aware, its correctness has never been questioned.   So long
as the corrupting or impolitic character of the agreement is
not so clear as to be readily apparent to the intelligent and
impartial mind, the just principles of the law, which hold
every man to a fair and full performance of his contract,
ought not be made to yield to any doubtful construction of
that somewhat variable and altogether undefined thing which
we call public policy.   While protecting the interests of the
public, the rights and interests of individuals are not to be
unnecessarily sacrificed.

In *Kellog v. Larkin,* 3 Pin. (Wis.) 123 (56 Am. Dec.
164), Mr. Justice Howe, discussing the same general ques-
tion, justly remarks:   "But I insist that, before a court
should determine a contract which has been made in good
faith stipulating for nothing that is *malum in se,* nothing
that is *malum prohibitum,* to be void as contravening the
policy of the State, it should be satisfied that the advantage
to accrue to the public from so holding is certain and sub-
stantial, not theoretical or problematical, and I submit that
he is the safest magistrate who is more watchful over the
rights of the individual than over the convenience of the pub-
lic, as that is the best government which guards more vigi-
lantly the freedom of the subject than the rights of the State."
In *Richardson v. Mellish,* 2 Bing. 229, Sir James Burrough
is quoted as saying:   "I protest, as my lord has done,

against urging too strongly upon public policy. It is a very unruly horse, and when once you get astride it, you know not where it may carry you. It may lead you from the sound law. It is never urged at all but when other points fail." Indeed, without extending citations, it may be said that the consensus of judicial opinion as expressed in the cases is that the power to invalidate commercial and business agreements on the grounds of public policy is so far reaching and so easily abused that it should be called into action to set aside or annul the solemn engagements of parties dealing on equal terms only in cases where the corrupt or dangerous tendency clearly and unequivocally appears upon the face of the contract itself, or is the necessary inference from the matters which are expressed. The only apparent exception to this general rule is to be found in those cases where the contract, though fair and unobjectionable upon its face, is a part of a corrupt scheme, and is made to disguise the real nature of the transaction.

Turning directly to the contract before us, we find not the slightest suggestion of an agreement on part of the plaintiff to secure the laying of a railway track to the door of his building by corrupt means or improper solicitation directed to the public authorities. There is no suggestion or promise that he will apply to the city council for the necessary permission to lay such track. True, under our statute, a public street or alley cannot be used for such purposes without the consent of the council; but there is absolutely nothing in the record before us to show that such consent had not already been obtained. Presumptions of the law are in favor of the good faith of all parties to a business transaction, and, if the language of a contract is fairly susceptible of a construction or explanation which renders it valid and enforceable according to its terms, such construction will be adopted in preference to one which brands it with illegality, and makes it possible for one to repudiate the performance of his prom-

2. SAME: contract between land-lord and tenant.

ise while demanding full payment of the consideration to
be given therefor.    In the absence, therefore, of anything
on the face of the contract stamping it as invalid *per se,* we
are bound to presume that plaintiff had already obtained the
required authority.

But, even if this be not admissible, we think it much
more in accordance with sound principle to hold that the
promise to furnish the track implied a representation and
assurance that the proper authorization by the city had been
obtained, than to find in such an agreement an implied un-
dertaking to thereafter procure the authority by illegal
means.    And we are prepared to go further, and say that,
even if we assume the contract to have been made with the
knowledge and understanding by both parties that the con-
sent of the city council to the laying of the track had not
yet been procured, the agreement was not invalid *per se.*    It
is not the law that all contracts dependent upon future legis-
lative action are against public policy, nor is it true that all
contracts to secure legislative action are unenforceable.    It
is correct to say that the law guards the processes of legisla-
tion against improper influences with jealous care, and will
not lend its aid to the enforcement of any contract which
expressly or impliedly contemplates the employment of cor-
rupt or otherwise improper methods to influence the official
conduct of legislators, or others charged with public duty.
But it would be a strange perversion of this wholesome rule
to say that it forbids all efforts of interested persons or
classes to secure the adoption of desired legislative measures.
Legislative bodies do not occupy such an exalted position
that they may not be approached in a proper manner by those
desiring action within the legitimate scope of legislative
power, and there is no consideration of public policy which
forbids any individual from undertaking by petition, by le-
gitimate argument, and by a fair showing of the circum-
stances to procure the passage of any law or ordinance within
the power of the body so addressed to enact.    For instance,

it has been held by this court that a contract by which a party acting as agent for a county undertook to obtain the allotment to such county of certain swamp lands for the accomplishment of which purpose legislation by Congress became necessary was not against public policy. *Denison v. Crawford County*, 48 Iowa, 211. The court there says: " There is nothing on the face of the contract that indicates that corrupt and improper influences were to be used, unless a strained construction of the words is adopted. Looking at the contract alone, there is nothing to indicate that any means were to be used, except those which were fair and legitimate." These words may well be applied to the contract before us. It would be, indeed, a strained construction of its terms to find therein the faintest implication that the use of improper methods to the desired end were contemplated by either party. It should be noted, also, that, in the case cited, the contract called for compensation to the agent contingent upon his success in securing the lands, though that feature does not appear to be discussed in the opinion. In *Sedgwick v. Stanton*, 14 N. Y. 289, it is said that persons may legitimately undertake to conduct an application to a Legislature as well as to conduct a suit at law. To the same effect, see *Russell v. Benton*, 66 Barb. (N. Y.) 539; *Brown v. Brown*, 33 Barb. (N. Y.) 533; *Beal v. Polhemus*, 67 Mich. 130 (34 N. W. 532); *Barber Co. v. Bottsford*, 56 Kan. 532 (44 Pac. 3); *Wildey v. Collier*, 7 Md. 273 (61 Am. Dec. 346); *Arthur v. Dayton*, 4 Ky. Law Rep. 831; *Hunt v. Test*, 8 Ala. 713 (42 Am. Dec. 659); *Barry v. Capen*, 151 Mass. 99 (23 N. E. 735, 6 L. R. A. 808); *Wood v. McCann*, 36 Ky. 366. This rule is directly or impliedly conceded in most of the cases where contracts have been invalidated because of an undertaking express or implied to solicit the support of individual legislators by personal, secret, or otherwise corrupting influences. *Trist v. Child*, 88 U. S. 441 (22 L. Ed. 623); *Coquillard v. Bearss*, 21 Ind. 479 (83 Am. Dec. 362); *Powers v. Skinner*, 34 Vt. 274 (80 Am. Dec. 677).

It will not do to say that, because in carrying out his agreement plaintiff could or might employ improper means or agencies, it must therefore be declared void. Such doctrine would avoid substantially every executory contract, for it would be difficult to imagine a promise in the performance of which a party so inclined could not perpetrate some fraud or wrong; but, where the doing of a wrongful act or the employment of wrongful methods is not contracted for either expressly or by clear implication, the recognized rules of construction, to say nothing of the charities of the law, require us to hold that its enforcement is not contrary to public policy. Dealing with a contract alleged to be void on grounds of public policy, the Supreme Court of Michigan, speaking by Justice Cooley, after an examination of its terms, says: " If a contract on its face contemplates illegal dealings, no question of intent can be open as a question of fact. But this contract was not one of that sort. It was perfectly legitimate on its face, and apparently contemplated nothing which was opposed to any principle or policy of the law. Now, if such a contract is susceptible of being carried out in a lawful way without conflict in any manner with any common intent which is shown to have been indulged or held by the parties at the time the contract was entered into, we discover no ground on which it can be held to be invalid. It is not enough to defeat it that it is susceptible of an illegal use, or that one of the parties to it may have contemplated and designed such illegal use, if the other had the right to suppose under the circumstances that the contract was to have effect according to its apparent and lawful construction." *Gregory v. Wendell,* 40 Mich. 439. And so we may say of the contract here in suit. No wrongful solicitation, bribery, or other improper influence is stipulated for. Why, then, should we imply any such obligation? It is susceptible of being performed in a lawful way, and that, we are bound to assume, is all the plaintiff undertook to do. There is no conceivable good reason why the owner of a warehouse or

wholesale store may not undertake to obtain the construction of a side track from a convenient railway to the door of his building without doing any act or setting in motion any influence tending to imperil social order or unsettle the foundations of government, even though the permission of the city council properly expressed may be a necessary condition to his success in that project. There is no city of any considerable proportions in the land where such conveniences do not exist, and such tracks are very frequently, if not usually, constructed along some public street or alley. They are not constructed on the initiative of the city, but the authority is ordinarily granted, we may assume, upon the application of the railway company or of the owner of the property to be accommodated, and no one has ever suggested that such requests involve any impropriety. If the owner may lawfully do these things on his own account, may he not lawfully contract with his tenant to secure such conveniences for the leased premises, and thereby maintain or increase their rental value? The procurement of the necessary authority from the city council by legitimate means was, theoretically at least, within the realm of possibility, and, as we have already noted, plaintiff's contract, neither expressly or impliedly, bound him to use any other means. If he succeeded, his contract would be performed, and he would be entitled to enforce payment of rent according to the terms of the lease. If he did not succeed, and the pleadings concede that he did not, it was a contingency which he must be supposed to have contemplated, and he is bound to make compensation to his tenant. His position is not different from that of any other party to an ordinary business agreement who finds himself unwilling or unable to perform an obligation he has assumed. Failing to perform, he must respond in damages.

The cases cited by appellant (*Providence Tool Co. v. Norris,* 69 U. S. 45 (17 L. Ed. 868); *Doane v. Railroad Co.,* 160 Ill. 22 (45 N. E. 507, 35 L. R. R. 588); *Williamson v.*

*Railroad Co.,* 53 Iowa, 126), and others of like import, announce rules and principles the correctness of which we are prepared to concede, but their applicability to this controversy is not apparent. In the *Tool Co.* case the plaintiff had agreed with the manufacturer to obtain a contract in its behalf with the government of the United States for the furnishing of certain muskets at the specified rate of $20 each, and to receive as compensation for such service the sum of $3 on each musket sold. Having brought suit to recover such compensation, the court held the contract void as against public policy. In other words, the plaintiff sought to recover the promised reward for influencing the official action of the government or its agents in the purchase of arms, thus opening the door to favoritism and corruption, and the principle upon which such an agreement is held unenforceable is manifestly salutary and just. In the *Doane* case the street railway company holding its franchise upon the implied condition of exercising the same for the accommodation of the public undertook to bind itself by contract never to lay more than a single track upon a designated street in front of plaintiff's property. Later, on attempting to lay a second track along said street, action was begun to recover damages for violation of the contract. A demurrer to the petition was upheld, and the contract pronounced void as against public policy. The *Williamson* case, decided by this court, holds to the familiar rule that a contract between a railway company and private individuals to control the location of passenger and freight stations will not be enforced by the courts. The theory of this line of cases appears to be that the location of railway tracks and stations is a matter to be determined as a question of public convenience, which, in turn, depends upon conditions which vary with the passing years, and that such convenience ought not to be sacrificed to the interest of individuals who may succeed in obtaining favorable contracts with the corporation. The case now before us does not appear to fall within the principle of this

or other precedents cited by counsel. None of the dangers or evils which may be apprehended from upholding such contracts as are condemned in the cases referred to' are reasonably to be feared from an agreement such as the plaintiff now seeks to repudiate. To say the very least, its alleged inconsistency with sound public policy is not of such clear and convincing character as to demand judicial interference with the right of the defendant to insist upon the terms of the contract.

In conclusion, it may be said that, even if we should hold the contract to furnish railway trackage void, it is not easy to understand how or upon what principle we are to uphold and enforce the appellant's claim to recover the consideration of an ·agreement which he himself denounces as inimical to the public welfare and public morals. The contract is not severable. It is not an agreement to pay a stated rental for the building and another stated rental for the trackage, but it is an undertaking to pay a given definite undivided sum for the use of the building with trackage. If the agreement is void as to either party, it is void as to both; and, if any part of a nonseparable contract is void for illegality or reasons of public policy, the taint extends to every part of it, and neither party can enforce any of its provisions against the other. If therefore, any part of the consideration of the lease ·before. us be so obnoxious to public policy as to render it unenforceable against the lessee, it follows upon the commonest principles of law and justice, that the courts should not give it any force or validity in favor of the lessor. The parties to the agreement are in *pari delictu,* and the law will extend its aid to neither. See *Chapman v. Haley,* and note. thereto in 4 A. & E. Ann. Cas. 712; also, *Bishop v. Palmer,* 146 Mass 469 (16 N. E. 299, 4 Am. St. Rep. 339) ; *Woodruff v. Hinman,* 11 Vt. 592 (34 Am. Dec. 712) ; *Kimbraugh v. Lane,* 74 Ky. 556; *Prost v. More,* 40 Cal. 347; *Ricketts v. Harvey,* 106 Ind. 564 (6 N. E. 325) ;

3. Same.

*Lindsay v. Smith,* 78 N. C. 328 (24 Am. Rep. 463); *Braitch v. Guelick,* 37 Iowa, 212; *Baird v. Boehner,* 77 Iowa, 622; *Gipps Co. v. De France,* 91 Iowa, 108; *Valentine v. Stewart,* 15 Cal. 387; *Railroad Co. v. Taylor,* 6 Colo. 1 (45 Am. Rep. 512). In the *Braitch* case, *supra,* involving the question of recovery upon a promissory note based in part upon an illegal consideration, this court, speaking by Cole, J., says: "That the note was given partly in consideration for intoxicating liquors is directly proven. The intoxicating liquors and the other articles were sold in a lump for a fixed price. The illegal cannot be separated from the legal consideration, and therefore the illegal part taints the whole." The principle thus affirmed has the general recognition of the courts, and there are few, if any, authorities to the contrary.

Nor can there be any recovery on a *quantum meruit* for services rendered or other considerations furnished under a contract which is void for illegality or for reasons of public policy. *Harris v. Roof,* 10 Barb. (N. Y.) 489; *Bixby v. Moor,* 51 N. H. 402; *Sullivan v. Horgan,* 17 R. I. 109 (20 Atl. 232, 9 L. R. A. 110); *Brinkman v. Esiler* (City Ct. N. Y.) 16 N. Y. Supp. 154.

4. SAME: *quantum meruit.*

For the reasons stated, the judgment of the district court must be, and it is, *affirmed.*