WILSON SUBDRAINAGE DISTRICT OF HARRISON-POTTAWATTAMIE
DISTRICT No. 1 et al., Appellees, v. GEORGE
RICHARDSON, Appellant.

**EVIDENCE:**   Documentary Evidence—Drainage Record as Evidence.
1   Drainage records which recite the appearance of parties before the
board of supervisors, the purpose of such appearance, the reference of
matters to the official engineer, and the reports and official action
thereon, are admissible in an action involving the subject-matter of
such record.

**BONDS:**   Validity—Public Policy.  An *inadequate* but good-faith bond,
2   conditioned to pay the excess costs entailed by constructing, across
a particular farm, a *closed* drain, instead of an *open* ditch (as other-
wise provided for the remainder of the district), which change was
of benefit to the *entire* district, is not void because contrary to public
policy, even though the *deficiency in the excess costs* fell as a burden
upon the entire district.

*Appeal from Harrison District Court.*—GEORGE W. CULLISON,
Judge.

NOVEMBER 14, 1922.

REHEARING DENIED FEBRUARY 17, 1923.

ACTION to recover on a bond given to plaintiff by defend-
ant.   Jury was waived, and case tried to the court.   Facts ap-
pear in the opinion.   Judgment was entered on the bond, from
which judgment, defendant appeals.—*Affirmed.*

*J. S. Dewell,* for appellant.

*John P. Organ,* for appellees.

ARTHUR, J.—I.   George Richardson, the original defendant,
died after this action was begun, and before it was tried, and his
administrator was substituted as defendant.

. All the evidence offered was by plaintiff.   In view of the
rulings on assignments of error involving admissibility of evi-

dence, appearing in Division II hereof, the proven facts may be stated as follows:

The appellee district was established in 1910, and lies partly in Harrison and partly in Pottawattamie County. The drainage ditch starts in the north end, in land owned by one Lougee, and courses southwest across the Lougee land and on across the land of R. W. Richardson. R. W. Richardson, the owner of the land, lived at St. Louis, Missouri. The original defendant, George Richardson, was his father, and lived in Harrison County, at Missouri Valley, Iowa. The improvement provided for in the first place was an open ditch, and the work was let for an open ditch. Before construction was begun, Lougee applied to the boards to have the ditch converted into a closed drain across his land, which application was granted upon payment by him of the extra expense occasioned by a closed drain. Before the drain was constructed across the Lougee land, R. W. Richardson concluded that it would be advantageous to have the closed drain continued across his land, instead of the open ditch, and he made application to the boards to have such change made. At a session of the boards on April 30, 1913, R. W. Richardson appeared before the boards, and asked to have the open ditch across his land changed to a tile drain. Before any action was taken on his application, he left for his home in St. Louis; and thereafter, his father, George Richardson, the original defendant in this action, looked after that matter for R. W. Richardson. At the meeting of the board on April 30, 1913, the request for the change was referred to Engineer Seth Dean for investigation, to be granted if the engineer should approve of the change and if R. W. Richardson was willing to pay the difference in the cost of an open ditch and a closed drain across his land, and to sign a written agreement to that effect. R. W. Richardson's first offer, made, through his father, to Engineer Dean, was to pay $300; but the boards refused to accept this proposition, and gave him 10 days within which to decide whether or not he would pay the difference in the cost of the open ditch and the tile drain. This was on July 30, 1913, when Engineer Dean reported that he had been unable to reach any agreement with Richardson, but that George Richardson, representing R. W. Richardson, would appear be-

fore the boards and offer such terms as he thought best. Engineer Dean reported to the boards an estimated cost of the open ditch and of a closed ditch across the Richardson land. A bond in the penal amount of $950 was executed by George Richardson, the original defendant, for payment of the difference in cost of construction of a closed drain and the cost of an open ditch. After the bond—which is the bond sued on—was executed, the boards ordered the change to be made. The actual cost of constructing the tile drain through the Richardson land was $1,951.29, plus the cost of right of way, $300, making the total cost $2,251.29. The estimated cost of the open ditch, including the cost of right of way, was $987.97, making the excess cost $1,263.32, approximately $300 more than the amount of the bond. It is not questioned that the drain constructed was a benefit to the Richardson land; and, according to the testimony of the engineer, the change from the open ditch to the tile drain was also a benefit to the district, in that the expense of maintenance in the future would be less for a tile drain than for an open ditch. The cost of the tile drain was paid for the same as the other drainage improvements in the district, by warrants drawn on the funds of the subdistrict.

II.    The errors assigned, except the one considered in Division III hereof, pertain to rulings of the court on admission of evidence; and we take those up first.

1. EVIDENCE: documentary evidence: drainage record as evidence.

Appellant complains that the court erred in admitting in evidence entries in the drainage record kept by the boards. A record entry was admitted in evidence, over objection by appellant that it was incompetent and immaterial, reading as follows:

"Robert Richardson appeared before the board, and asked that a tiled drain, in lieu of an open ditch, be constructed in the Wilson Subdrainage District, where same enters and affects his lands in the immediate vicinity in the Wilson Subdistrict. On motion, the matter was referred to Engineer Seth Dean for investigation and examination; and upon his approval, the request is to be granted, on condition that said Robert Richardson is willing to pay the difference in the cost, and sign a written agreement to that effect."

Also, a record entry was received in evidence of the report

of Engineer Dean, over objection of appellant, reading as follows:

"In the matter of substituting tile for the open ditch through the land of R. W. Richardson, no agreement has yet been reached; and by arrangement, Mr. Richardson will appear before you and present terms as he thinks best in the matter."

Also, an offer from the record was received, over objection of appellant, reading as follows:

"In the matter of the change from an open ditch to a tile drain through the land of R. W. Richardson, it was decided to give Richardson 10 days in which to decide and agree to pay the difference between the open ditch and the tile drain."

Also, there was received in evidence, over objections of appellant, the record reports of Engineer Dean of the estimated cost of the open ditch and of the closed drain. Appellant also complains because Engineer Dean, as a witness, was allowed to testify as to the origin of the proposed change from an open ditch to a closed drain across the land of R. W. Richardson, and how the change was effected, the particular objection being that the answer showed conversations with a party other than the defendant, and not in defendant's presence.

Receiving the recitals of the record in evidence was not error. Such was competent evidence of the transactions of the boards. It is a record authorized by statute to be kept. While certain recitals of records, such as appearances of parties at meetings of the board, may be controverted, they are, nevertheless, proper entries to be made, and competent evidence. Appellant's objection that the testimony of Engineer Dean was not competent, because it appears that this conversation was with a party other than the defendant, and not in defendant's presence, was not well taken. The record shows that the talk was with George Richardson, the original defendant in this action, who was appearing for his son, R. W. Richardson, in the matters here involved.

III. We now come to the consideration of the only other assignment of error specified by appellant, which relates to and involves the important and decisive question in the case, which

2. BONDS: valid-
 ity: public
 policy.

is as to the claim that the contract, the bond in suit, is void, as against public policy.

It is not claimed by appellant in the case before us that the transaction leading up to the contract or bond in question was tainted with fraud or corruption of any kind. However, the position taken by counsel for appellant is not unsound on principle. It is, in substance, that, if the contract has a tendency to cause an act to be done which is opposed to the interests of the public, it is invalid. Counsel cites cases so holding.

It has been, in substance, so often announced that citations are unnecessary, that whether a contract is against public policy is a question of law, for a court to determine from all the facts and circumstances of each case. It has also been frequently held that it is to the interest of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts, and that, therefore, agreements are not to be held void, as being contrary to public policy, unless they are clearly contrary to what the legislature or judicial decision has declared to be the public policy, or unless they manifestly tend to injure the public in some way. Appellant's argument proceeds on the theory that the public is concerned in the transaction involved, and that the transaction contravenes public policy. While perhaps it may not be said that the general public is not interested in any way in the transaction between a board of supervisors and a landowner in a drainage district, yet the general public is only remotely and incidentally affected. *Green v. Harrison County*, 61 Iowa 311.

Boards of supervisors are authorized to make changes in the improvement after the establishment of the district, but before actual construction of the ditch, on recommendation of the engineer. Code Supplement, 1913, Section 1989-a11. Also, a board has the power to convert an open ditch to a closed drain, ''when considered for the best interests of the public rights affected thereby.'' Code Supplement, 1913, Section 1989-a21.

In the instant case, the board of supervisors might have caused an assessment of benefits to be made, whereby an assessment would have been laid against the land of Richardson,

covering the cost of the closed drain across his land. The fact that the boards did not resort to that proceeding, and instead received from the landowner a bond to cover the additional cost of a closed drain across his land, we think did not contravene public policy or good morals, although it turned out that the bond given was not quite large enough to cover the cost. No landowner within the district is complaining of the transaction. R. W. Richardson, the landowner himself, is not complaining,—he is not a party to this suit. The bondsman was not a landowner in the district.

Counsel for appellant argues with some plausibility that the cost of the closed drain across the Richardson land, over and above the amount of the bond, is about $300; and that, if the boards may take such bond, resulting in a deficit of $300, they might take a bond or bonds resulting in a deficit of a much greater amount. The question is not before us, and we do not pass upon it; but we apprehend that ample remedy would be available to the landowners of the district for any substantial abuse of authority in such a matter on the part of the boards. In the instant case, we find no such abuse. While the change made incurred some $300 expense not covered by the bond, the change, according to the testimony of the engineer, is of substantial benefit to the district, and the landowners within the district are not complaining that such change was made, and that some additional cost to the whole district was incurred thereby. The change in construction from an open ditch to a closed drain across the Richardson land was made at the request of Richardson, a landowner, and the bond was voluntarily given; and we find no reason in offended public policy to relieve his bondsman from obligation to pay the bond. We do not think that the transaction contravenes public policy or interest. *Cole v. Brown-Hurley Hdw. Co.*, 139 Iowa 487; *Baldwin & Co. v. Moser*, (Iowa) 123 N. W. 989 (not officially reported). In the *Cole* case, we said:

"No court should hesitate to declare void any agreement or contract to corrupt or improperly influence the official conduct of any public servant; but it is an equally sound principle which leads courts to declare that, before applying such remedy, and permitting one who has received a valuable consideration for a

promise fair upon its face to escape its performance by plead-
ing the invalidity of his own agreement, such fatal defect therein
must be so clear as to be free from doubt.''

We find no reason to disturb the judgment of the trial court,
and it is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.