FRANCIS W. WILLIAMS ET AL., Respondents, v. FREDERICK TIEDEMANN, Appellant.

### December 3, 1878.

1. A contract for the sale of goods for future delivery is not rendered a wager by reason of the fact that the vendor has not the goods on hand to fill the contract, but expects to go into the market for them.
2. Where it is agreed that the goods sold are not to be delivered, but a settlement of differences made according to market fluctuations, the contract is a wager, and will not be enforced.
3. Where either party to the contract intends a *bonâ fide* sale or purchase, the contract is not a wager, whatever may have been the secret intent of the other party, and courts will enforce it at the suit of the innocent party.
4. An executory contract may be obligatory upon one of the parties to it, and optional as to the other.
5. There is no presumption of law against the validity of a contract the subject-matter of which is proper, but the burden is on him who attacks its validity.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

CONDE & BATEMAN, for appellant: Contracts such as that in issue are mere wagers, and will not be enforced. And where it appears that the parties intentionally adopted a legitimate form to cover a mere gambling or wagering transaction, or to overreach the law and evade the decisions of courts of justice, the mere parade of honest forms will not avail. — *Waterman* v. *Buckland*, 1 Mo. App. 45; *Brua's Appeal*, 55 Pa. 296; *Sanderson* v. *Shaw*, 101 Mass.

145 ; *Cassard* v. *Hinman*, 1 Bosw. 201 ; *Kirkpatrick* v. *Bonsall*, 72 Pa. St. 155 ; *Amory* v. *Gilman*, 2 Mass. 6 ; *Grazewood* v. *Blain*, 73 Eng. Com. Law, 525 ; *Ex parte Young*, 6 Biss. 53 ; *Lyon* v. *Culbertson*, 5 Cent. L. J. 401.

SILAS B. JONES, for respondents : A contract may be optional with one of the parties, in part or in whole, and obligatory on the other. — *Giles* v. *Bradley*, 2 Johns. Cas. 253 ; *Disborough* v. *Neilson*, 3 Johns. Cas. 81 ; *Tyler* v. *Barrows*, 6 Robt. 104 ; *Kirkpatrick* v. *Bonsall*, 72 Pa. St. 155 ; *Mason* v. *Payne*, 47 Mo. 517. In a contract of sale of goods to be delivered in future, the fact that the vendor has not the goods does not make the contract a wager. — *Hibblewhite* v. *McMorine*, 5 Mee. & W. 462 ; *Mortimer* v. *McCallan*, 6 Mee. & W. 58 ; *Stanton* v. *Small*, 3 Sandf. 230 ; *Frost* v. *Clarkson*, 7 Cow. 24 ; *McIlvane* v. *Egerton*, 4 Robt. 422 ; *Tyler* v. *Burrows*, 6 Robt. 104 ; *Kingsbury* v. *Kirwan*, 6 Cent. L. J. 228 ; *Smith* v. *Bouvier*, 70 Pa. St. 325 ; *Brown* v. *Speyers*, 20 Gratt. 296 ; *Rumsey* v. *Berry*, 5 Me. 570 ; *Walcott* v. *Heath*, 78 Ill. 433. If either party intends a' *bonâ fide* purchase or sale, the contract will, at his suit, be enforced. — *Pixley* v. *Boynton*, 79 Ill. 351 ; *Logan* v. *Musick*, 81 Ill. 415 ; *Corbitt* v. *Underwood*, Ch. Leg. N., February 17, 1877.

LEWIS, P. J., delivered the opinion of the court.

Plaintiffs sue on two drafts drawn in their favor by William L. Black, on defendant, and by him accepted, in March, 1877, one being for $1,000 and the other for $1,500. The defendant pleads by way of defence that the acceptances were without consideration, and were given on account of certain gaming or wagering contracts concerning the rise or fall of cotton in market price. Issue was joined on this defence, and the verdict of a jury was in favor of the plaintiffs.

The material question in the cause is whether the trans-

actions between the parties were within that forbidden class of wagers thinly disguised with a semblance of mercantile trading, which have always been denounced by the courts as *contra bonos mores* and not entitled to judicial protection. The instructions given by the Circuit Court were clearly appropriate to the facts in proof, and if they correctly set forth the law, it will be difficult to find a reasonable ground for disturbing the verdict of the jury. For the plaintiffs, the court instructed as follows : —

" 1. The court instructs the jury that a mere intent or purpose of the defendant not to receive or deliver any cotton in the transactions mentioned in the evidence, but to settle differences only, does not make the transactions bets or wagers on the price of cotton ; but to make said transactions bets or wagers on the price of cotton, there must have been a mutual understanding between both the seller and buyer in said transactions that no cotton was to be delivered or received in said transactions, and that there was to be a settlement of differences only.

" 2. The court instructs the jury that a party may contract to sell cotton at a price agreed upon, though he may own none at the time of the contract, to be delivered to the purchaser during a future month agreed upon at the time of the contract to sell, upon any day of said month that the seller may choose, if the buyer and seller so agree, and that such a transaction is not objectionable on the grounds of betting, gaming, or wagering, unless it is understood by both the buyer and seller, at the time of making said contract, that no cotton is to be delivered, but that there is to be a mere settlement of differences between the parties according to the market price of cotton at the time stipulated for delivery."

An instruction was given for defendant, as follows : —

" 1. If the jury believe from the evidence that the transaction between the plaintiffs and the defendant was one in which no actual sale and delivery of cotton was contem-

plated, but merely the payment of differences according to the rise or fall of the cotton-market, the contract was a gaming contract, and void in law, and any notes or accept ances given in consideration thereof are also void in law; and if the jury further believe from the evidence that the drafts sued upon were accepted by defendant in pursuance of one or more of such wagering or gaming contracts, then the jury must find for the defendant."

Counsel have favored us with very carefully prepared briefs, whose thoroughness of research has lent us an exceptional aid in this investigation. The subject of wagering-contracts has undergone much discussion in the courts, on both sides of the Atlantic, so that the controlling tests by which their presence is to be determined are now clearly defined and universally agreed upon. It may suffice to summarize the general conclusions wherein there seems to be no conflict among modern authorities.

The simplest and purest form of mercantile transaction is where A. purchases a commodity for a certain price, takes it into actual possession, and afterwards sells and delivers it to B., who pays to A. a price agreed upon. The price in each operation is supposed to represent the real or market value of the article. Actual delivery consummates the transaction, whereby the buyer has in his possession a tangible equivalent for the money he has paid. If there be a rise or a fall in the market price, or if the purchase be in one market and the sale in another, these circumstances may determine the question of profit or loss; but, in any event, there is a fair exchange of money for goods, with absolute dominion over the acquisition on either side. Every step in the process is legitimate, implying no tendency in derogation of commercial or social propriety.

A second form of mercantile transaction is where the seller does not at once deliver the article sold, but binds himself in a contract to deliver it at a future time. He may or may not have the commodity in his possession at the time

of the contract. But the query whether he has it or not can be of no possible concern to the purchaser, provided it be forthcoming at the time agreed upon. If the seller has it not, he must purchase or acquire it in due time, so that the dominion may be transferred in return for the money which the purchaser is to pay or has already paid. Here again there is a fair exchange of equivalents, in which no pernicious tendency can be discerned. It was said by Lord Tenterden, in *Bryan* v. *Lewis*, Ry. & M. 386, that if a party enters into a contract for the sale of goods to be delivered at a future day, and neither has the goods at the time, nor has entered into any prior contract to buy them, nor has any reasonable expectation of receiving them by consignment, but means to go into the market and buy the goods which he has contracted to deliver, such a contract on the part of the vendor amounts to a wager on the price of the goods in the market. But in the later case of *Hibblewhite* v. *McMorine*, 5 Mee. & W. 462, this *dictum* of Lord Tenterden was unanimously overruled. It was declared by Parke, B., that the doctrine was clearly contrary to law, and by Alderson, B., that there existed no principle in its favor. Still later English adjudications concur in rejecting the doctrine, and the current of American decisions is to the same effect. *Mortimer* v. *McCallan*, 6 Mee. & W. 58 ; *Stanton* v. *Small*, 3 Sandf. 230 ; *McIlvane* v. *Egerton*, 4 Robt. 422 ; *Walcott* v. *Heath*, 78 Ill. 433 ; *Kingsbury* v. *Kirwan* (Sup. Ct. N. Y.), 6 Cent. L. J. 228. In sales of this character, the delivery may be agreed upon for a day certain in the future, or it may be for any one of the days running through a certain period, such day to be selected by one party or the other, as the agreement may provide. In the form most frequently used, the day may be selected by the seller ; and this privilege is called seller's option. Contracts of this class abound in commercial communities, and there is no reason why they should not be as generally upheld as any

other contracts whose performance is appointed for a future day.

Nearly analogous to the last-mentioned form is that wherein an executory contract is obligatory upon one party, but not upon the other. A. may, for a sufficient consideration, bind himself to buy at a fixed price all the wheat that B. may bring to his warehouse on a certain day; B., however, may be under no obligation to bring any wheat at all. In *Giles* v. *Bradley*, 2 Johns. Cas. 253, the court said: "There can be no doubt that a contract may be so made as to be optional on one of the parties and obligatory on the other, or obligatory at the election of one of them." The rule was illustrated in *Mason* v. *Payne*, 47 Mo. 517; also in *Kirkpatrick* v. *Bonsall*, 72 Pa. St. 155, and in *Tyler* v. *Burrows*, 6 Robt. 104. Thus, a contract for a sale and delivery which is obligatory on one party and optional as to the other, will not on that account be denied enforcement in a court of justice, unless, as in Illinois, it be expressly forbidden by statute.

In each of the foregoing examples there is contemplated an actual exchange of equivalents, or of what the parties are willing to consider as such. The seller parts with a certain property for the money he receives. The buyer parts with his money in return for the property acquired. It may sometimes happen that when the time arrives for performance, the seller, not having the goods on hand, finds that he must pay a higher price for them than that which his vendee has agreed to pay. The vendee, although entitled to actual delivery, is willing to waive it, provided he can realize the same mercantile benefit that would accrue from the receipt of the goods and a sale of them at the market price. This may be effected by a settlement of differences with his vendor, who then pays him the amount of the net rise, instead of procuring and turning over the property. In like manner, if there has been a fall in the

market price, the seller may realize, on a settlement of differences, all the mercantile advantages which would result from a purchase at the reduced price and a delivery to his vendee at the price agreed upon. In either of these transactions no taint is thrown upon the original contract, which contemplated actual transfer and delivery. The actual delivery may still be insisted on by either party, but is dispensed with in the convenience of both.

Let us now suppose a case in which, when the agreement is made, no delivery is contemplated by either party. It is, in fact, agreed that there shall be no exchange of equivalents, real or supposed. A settlement of differences according to the fluctuations of the market is all that either party intends, and all that they contract for. For the money that the seller is to receive, if any, he parts with nothing. For the money that the buyer is to pay, if any, he gets nothing. The parties simply wage against each other a contest of skill in predicting future conditions of price. When settlement-day comes, the winner pockets the proceeds, not merely without giving a *quid pro quo*, but without having incurred any obligation, in any contingency, so to do. This is simply a wagering contract from the beginning, whose demoralizing tendencies are so universally recognized that the courts will not enforce it for either party. The profits realized by the winner are of the same stamp with those which follow the turning of a card or the revolution of a wheel. Nothing is added to the country's commercial prosperity or wealth. There is not even the remote or indirect benefit resulting from the incidental demand in every legitimate transaction to the producer or manufacturer of the product concerned.

It is manifest that in order to make a wager, both parties must intend it to be such. If one intends a *bonâ fide* sale or purchase, while the other means only a gambling risk upon prospective differences, there will be no propriety in depriving the former of the benefit of his contract because

of a secret reservation in the mind of the latter. As every contract, to be enforced, must be upon the mutual understanding of the parties, so a contract, to be denied enforcement because of its illegitimate composition, must have been so contrived in the common interest of the makers, or at least in the interest of him who is to be precluded of its benefits. The law will not presume against the validity of a contract relating to a proper subject-matter. The burden of proof is upon him who alleges its invalidity.

It will be apparent from what has been said that the instructions given in this case were in accordance with our views of the law. The testimony tended to show that the plaintiffs were cotton-factors in the city of New York, and that the defendant, residing in the city of St. Louis, employed them, through an agent, to make purchases of cotton to be delivered during the months of April and June, at seller's option. The plaintiffs' testimony tended to prove that their contract with the defendant contemplated actual purchases and deliveries, and that they bought and sold the cotton as directed by the defendant. The testimony for defendant tended to show that on his part nothing was intended but a settlement of differences, without any receipt or delivery of cotton, and that such was the understanding of the plaintiffs, through their agent, with whom the contract was made. As we cannot pass upon the weight of the testimony on either side, there is nothing to authorize an interference with the verdict of the jury upon the leading issues before them.

The defendant presents a number of other points upon the record, but we do not find in them any sufficient ground for a reversal. The application for continuance was lacking in form and substance, and was properly denied. But were this otherwise, there could be no reversal on that account, when the alleged absent witness is found to have appeared and testified on the trial. Objections to the exclusion of testimony offered by defendant, and to the refusal of in-

structions, were not properly preserved in the motion for a new trial, and cannot be here considered.

We find no admissions of testimony for the plaintiffs by which the defendant's rights could be prejudiced in the least degree. The judgment will be affirmed. All the judges concur.