## C. H. TAYLOR, Appellant, v. HENRY W. SEBASTIAN, Respondent.

St. Louis Court of Appeals, June 6, 1911.

1. GAMBLING CONTRACTS: Purchase and Sale of Grain: Intent to Gamble: Statute. Under sections 4780, 4781 and 4785, Revised Statutes 1909, a contract for the purchase or sale of grain is void, if *either* of the parties to it lacks intention to deliver or receive the grain, irrespective of the intention of the other party.

2. ———: Speculative Transactions: Statutes: Construction. Section 4780, Revised Statutes 1909, declaring that purchases and sales of grain, either on margin or otherwise, without any intention of delivering, receiving and paying for the same, are

unlawful, and imposing a fine for violation, is a penal statute and is to be strictly construed, and only such transactions are covered by it as are within both its spirit and its letter.

3. ——: Purchase and Sale of Grain: "Calls" Not Within Statute. A contract providing that, on demand made within a specified time, the seller would execute and deliver to the buyer a contract obligating himself to sell and deliver to the buyer within a certain time a certain quantity of grain for a stipulated price, known as a "call," is not a contract for the purchase and sale of grain, but is a *contract for a contract* of purchase and sale; and such a contract is not within the prohibition of section 4780, Revised Statutes 1909, since that statute speaks only of purchase and sales, or pretended purchases and sales, or contracts for the purchase and sale, of grain, etc., and does not apply to a *contract for a contract* of purchase and sale.

4. ——: ——: "Calls:" Intention of Both Parties to Gamble. Where the real intention of *both* parties to such a contract (known as a "call") is, that if the holder exercises his option, no contract for the purchase by the one party and sale by the other is to be made, but, in lieu thereof, the seller is to pay the holder the difference between the price agreed upon and the market price at the time of closing the "call," or if the intention of *both* parties is to make such contract of purchase and sale, but not to make delivery thereunder, and to settle by paying the difference between the contract price and the market price, it is a mere wager and unenforcible.

5. ——: ——: "Calls." Such a contract (known as a "call") will not be considered a wager merely because it is optional on one of the parties and obligatory on the other, or because it contemplates the execution of a contract to sell, for future delivery, grain which he who contracts to sell has not on hand but expects to go upon the market and purchase for delivery in pursuance of his contract, or because, if the contract to sell be entered into, the party contracting to purchase later sells the same quantity of grain to the party contracting to sell, and the parties, waiving cross-deliveries, then settle by paying the difference between the price at which they respectively bought.

6. ——: ——: ——: Presumption of Validity: Burden of Proof. Where such a "call" contract is legal on its face, the law will not presume against its validity; the burden of proving invalidity resting upon the party alleging it.

7. ——: ——: ——: Validity: Question for Jury, When. Whether the buyer and seller of a "call" contract for grain contemplated a delivery or a mere settlement of difference between market and contract prices is a question for the jury,

unless the uncontroverted evidence is such that reasonable, minds could not differ as to the conclusion to be drawn therefrom.

8. ———: ———: ———: ———. In an action to recover damages for the breach of a contract giving plaintiff the option, upon demand made within a specified time, to receive from defendant, and obligating defendant to execute and deliver to plaintiff, a contract for the purchase and sale of grain, where defendant pleaded the contract was void as being a wagering contract, *held*, the evidence was insufficient to justify the conclusion, as a matter of law, that the contract was a wagering one.

9. PLEADING: Contracts: Variance. Where an action is brought on a special contract, the plaintiff can recover only on that contract.

10. CONTRACTS: Pleading: Variance. Where plaintiff declared on a contract for the sale of wheat, alleging that, by the instrument sued on, it was agreed that on or before May 18th, upon demand of plaintiff, defendant would sell to plaintiff a quantity of wheat at a specified price for delivery in July, and alleging a demand by plaintiff that defendant sell to him such wheat and defendant's refusal and that at the time of the demand and at all times, in accordance with the terms of the contract, plaintiff was ready, and offered, to pay for such wheat, but the proof related to a contract to make and enter into, on demand, an executory contract to sell, there was a total failure of proof, and plaintiff was not entitled to recover.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields*, Judge.

AFFIRMED.

*John Lally* for appellant.

The statute does not prohibit option dealing absolutely. In order that the instruction be proper, it would have to appear that the instrument sued on is prohibited by the above statute. All the evidence tended to show that the transaction in question was lawful. The circumstances attending the transaction are to be considered. Dierling v. Sloop, 67 Mo. App. 446. It further appears from the evidence that the offer of defendant was sent to and was accepted in the

.city of Chicago, Illinois, in which event the above section of the statute of Missouri does not apply. State v. Gritzner, 134 Mo. 512; Edwards Brokerage Co. v. Stevenson, 160 Mo. 517.

*Charles J. Maurer* for respondent.

The court did not err in giving a peremptory instruction. Lane v. Grain Co., 105 Mo. App. 215.

STATEMENT.—This is an action to recover damages for breach of contract. At the close of plaintiff's evidence the court gave an instruction in the nature of a demurrer thereto and the plaintiff took a nonsuit with leave to move to set it aside. Thereafter the motion was filed, and being denied the plaintiff duly excepted and appealed.

By his petition, so far as we need notice it, plaintiff alleges, in substance, that on May 8, 1907, by an instrument in writing subscribed by the defendant, it was agreed that on or before May 18, 1907, upon demand of plaintiff, "the defendant would sell to plaintiff twenty-five thousand bushels of wheat at eighty-six and three-quarter cents per bushel and deliver same to plaintiff during the month of July, 1907;" that on May 18th, "the plaintiff made demand upon the defendant to sell to plaintiff said twenty-five thousand bushels of wheat at the price and upon the terms agreed, but the defendant then and there refused to sell to plaintiff said wheat and failed and refused to comply with the terms and conditions of the aforesaid agreement in any particular, to plaintiff's damage in the sum of $2125." "That at the times plaintiff made demand upon the defendant for the sale of said wheat to him, and at all times, in accordance with the terms and conditions of said contract, the plaintiff was ready, able and willing and duly offered to pay for said wheat." The defendant, in substance, pleaded that the alleged contract was illegal and void, being a

species of wagering contract known as a deal in "puts and calls," and it being agreed and intended by both parties that no delivery of wheat was to be made, but the contract was to be settled by the payment of the difference between the contract price and the market price provided said difference in price was in favor of the plaintiff. The reply was a general denial. The plaintiff offered and read in evidence the following instrument of writing subscribed by the defendant:

"5-8-07.

"Sold Bearer:

"Call on twenty-five thousand (25,000) bushels, St. Louis, July wheat, at eighty-six and three-quarters (86¾) cents per bushel; good till close of market, Saturday, May 18, 1907. Received payment.

"H. W. Sebastian."

The testimony of plaintiff's witnesses tended to prove that, on May 8, 1907, the said instrument was sold and delivered by defendant to one Wassen, a broker, who paid him twenty-five dollars net therefor. By said instrument, as its language was explained by witnesses experienced in grain market and exchange dealings and usage, the defendant granted to the bearer, in this case the plaintiff, an option or privilege until the close of the market, May 18, 1907, on demand to have from the defendant a contract binding the defendant to sell and deliver, and the plaintiff to buy and take, 25,000 bushels of wheat at 86¾ cents per bushel deliverable in July. The contract which the plaintiff might thus have on demand was to be in two papers and executed by their respective brokers. If plaintiff decided to exercise his option, he would have his broker "call" defendant, i. e., make demand for the contemplated contract to sell; the defendant would then arrange for a broker to represent him and give the name of such broker to the plaintiff's broker. The two brokers would then come together and deal as principals, the defendant's broker executing and

delivering to plaintiff's broker a contract, in a well recognized and legal form, to sell 25,000 bushels of wheat deliverable in July, 1907, at 86¾ cents per bushel, and the plaintiff's broker executing and delivering to defendant's broker a corresponding contract to buy. If, on May 18, 1907, the market price of wheat for July delivery happened to be lower than 86¾ cents per bushel, the plaintiff could buy cheaper in the market, therefore would not "call" the defendant. If the price went above 86¾ cents, he would "call" the defendant and compel exchange of the contracts of purchase and sale. When executed and exchanged, the contracts of purchase and sale might be retained and actual delivery of wheat and payment therefor had thereunder, or if the one bound to sell happened to sell the quantity called for by it to the one bound to buy, they might dispense with cross-deliveries by cancelling the contracts and settling the difference. Before May 18, 1907, the instrument sued on in the case at bar was returned by its Chicago connection to Wm. A. Gardner & Co., in St. Louis, as broker for the plaintiff, to make the "call" or demand of defendant for the contracts of sale. The bookkeeper of Wm. A. Gardner & Company called up defendant several times over the telephone and he promised to give him the name of his broker to make the contracts. This promise he failed to keep.

CAULFIELD, J. (after stating the facts).—The parties assume that the trial court forced plaintiff to take a nonsuit because it believed that upon plaintiff's evidence no delivery was intended and the transaction was a mere wager and void. We will first consider the action of the court from that standpoint. At the outset we may say that the contract in suit does not come within the denunciation of section 4780, Revised Statutes 1909. That section denounces as gambling and void "all purchases and sales or pretended pur-

chases and sales, or contracts and agreements for the purchase and sale, of . . . grain, . . . either on margin or otherwise, without any intention of receiving and paying for the property so bought, or of delivering the property so sold, and all the buying or selling or pretended buying or selling of such property on margins or on optional delivery when the party selling the same, or offering to sell the same, does not intend to have the full amount of the property on hand or under his control to deliver upon such sale, or when the party buying any of such property or offering to buy the same does not intend actually to receive the full amount of the same if purchased.'' If *either* of the parties lacks intention to deliver or receive, etc., as contemplated by this section, the contract is void, irrespective of the intention of the other party. [Sections 4781, 4785, R. S. 1909; Atwater v. Brokerage Co., 147 Mo. App. 436, 126 S. W. 823.] This is a penal statute and is to be strictly construed and only such transactions are covered by it as are within both its spirit and its letter. [State v. Gritzner, 134 Mo. 512, 527, 36 S. W. 39.] It will be noted that the statute speaks only of *purchases* and *sales* or pretended *purchases* and *sales,* or contracts and agreements for the *purchase* and *sale* of *grain,* etc. Obviously the contract in suit is none of these. It is a contract for a *contract* of purchase and sale of grain. It is at least once removed from any transaction which might come within the statute. But it may be void even though without the statute. If the real intention of *both* parties was that if the plaintiff exercised his option, no contract for the purchase and sale of wheat would be made, but in lieu thereof the defendant should pay the plaintiff the difference between the price agreed upon and the market price, or if the real intention of *both* parties was that such a contract should be made, but not enforced or delivery made thereunder and should be settled by the payment of the dif-

ference between the contract price and the market price, then in either such event the transaction would be a mere wager, a contest of skill in predicting future conditions of prices, and would be unenforceable. [Williams v. Tiedemann, 6 Mo. App. 269.] The contract is not, however, to be considered a wager or illegal merely because it is optional on one of the parties and obligatory on the other [Williams v. Tiedemann, 6 Mo. App. 269]; or because it contemplates the execution of a contract to sell for future delivery wheat which he who contracts to sell has not on hand but expects to go upon the market and purchase for delivery in pursuance of his contract [Kent v. Miltenberger, 13 Mo. App. 503]; or because, if the contract to sell be entered into, he who contracts to purchase may later sell the same quantity of wheat to him who contracts to sell and the parties waiving cross-deliveries may settle by paying the difference between the prices at which they respectively bought. [Kent v. Miltenberger, 13 Mo. App. 503.] It would be illegal if, when the contract was made, both parties intended and contracted for a settlement of differences according to the fluctuations of the market, and neither of them contemplated a delivery. [Williams v. Tiedemann, supra.] But, where, as here, the contract is legal on its face and relates to a proper subject-matter the law will not presume against its validity. Whether the parties did not contemplate a delivery but did contemplate a mere settlement of differences is a question of fact, and unless the uncontroverted evidence is such that from it reasonable minds could not differ as to the conclusion to be drawn therefrom the question is one for the jury to determine upon all the facts and circumstances in the case. [Kent v. Miltenberger, 13 Mo. App. 503; Schreiner v. Orr, 55 Mo. App. 406]. And the burden of proving that fact lies upon the party alleging it, which in this case is the defendant. [Williams v. Tiedemann, supra.]

We have been unable to discover anything in the evidence before us to justify the conclusion as a matter of law that the contract in suit is a mere wagering contract or transaction. The defendant isolates the following question and answer from the examination of one of plaintiff's witnesses and insists that they justified such conclusion. "Q. Is wheat ever delivered on put and call contracts? A. Not on this kind of contracts." But the witness' testimony, as well as the other evidence in the case, makes it very apparent and conclusive that he meant by his answer that while *wheat* is not delivered on *this* kind of contracts, a *contract* to sell wheat is so delivered. In other words the contract in suit does not give an option to have *wheat* but to have a *contract* for wheat.

If there was no other ground upon which to base the action of the trial court than that we have discussed we would feel compelled to reverse the judgment; but there is another ground upon which in our opinion the judgment of the trial court should be affirmed. This is an action on a special contract and in such an action the plaintiff can recover only on the contract pleaded; not on a different one. [Laclede Co. v. Tudor Iron Works, 169 Mo. 137, 69 S. W. 384.] Plaintiff alleges that by the instrument sued on it was agreed that on or before May 18, 1907, upon demand of plaintiff, the defendant would *sell* to plaintiff 25,000 bushels of wheat at 86¾ cents per bushel and deliver the same to plaintiff during the month of July, 1907. Then, after alleging a demand that defendant sell to him said wheat and defendant's refusal to *sell* it to him, plaintiff alleges that "at the times plaintiff made demand upon the defendant for the *sale* of said wheat to him and at all times, *in accordance with the terms of said contract* (the contract sued on) the plaintiff was ready, able and willing and duly offered to *pay* for said wheat." All this shows a clear intent to plead a contract to *sell* upon demand, i. e., to presently trans-

fer the absolute or general property in the wheat for a price in money. Now plaintiff's proof, as we have already made plain, is of an entirely different contract, viz., a contract on demand to make and enter into a executory *agreement* to sell. There was therefore, a total failure of proof on plaintiff's part, and the circuit court properly forced him to take a nonsuit. Its judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.