# HOGSTON v. BELL.

[No. 22,748. Filed May 22, 1916. Rehearing denied November 10, 1916.]

1. CONTRACTS.—*Public Policy.*—While contracts for the payment of fixed fees for legitimate professional services rendered before legislative bodies are valid, yet, when the fees are made contingent on success in obtaining the desired results, the contract becomes so tainted with illegality as to render it void. p. 543.

2. CONTRACTS.—*Public Policy.*—*How Determined.*—What the public policy of a state is must be determined from a consideration of

its constitution, its statutes, the practice of its officers in the course of administration and the decisions of its courts of last resort. p. 545.

3. CONTRACTS.—*Validity.*—*Contracts for Lobbying.*—*Statute.*—The passage by the general assembly of the act of 1915 (Acts 1915 p. 5), concerning the regulation of lobbying, which, after authorizing the employment of legislative counsel and agents, expressly declares in §4 that "no person shall be employed as legislative counsel or agent for a compensation dependent upon the passage, amendment or defeat of any proposed legislation or any amendment thereof or upon any other contingency connected with the action of the general assembly or of either house, or any committee thereof"; thereby enacts into statutory law the rule that compensation for services before legislative bodies should not be contingent on the success of such services, the legislature thus interpreting such rule as prohibiting on that ground only those contracts in which compensation is made to depend, directly or indirectly, on a contingency connected with the action of the legislative body. p. 546.

4. CONTRACTS.—*Construction.*—*Existing Law.*—Every person is charged with knowledge of the law, and, except so far as modified by the terms of the agreement, existing statutes and principles of law applicable to the subject-matter of the transaction become part of a contract, and must be read into it. p. 547.

5. STATES.—*Action Against.*—While the State cannot be sued in its own courts or in any other, without its consent, nor may the same result be reached indirectly by suing an officer, department or agent of the State, as nominal defendant, in an action which affects actual rights of the State in property, yet the mere fact that the State claims an interest in the subject-matter of a suit does not necessarily render such action a suit against the sovereign power. p. 548.

6. WILLS.—*Contest.*—*Statute.*—*Construction.*—The purpose of §3154 Burns 1908, §2596 R. S. 1881, providing that in a proceeding to contest a will "the executor and all other persons beneficially interested therein shall be made defendants thereto," was to confer on the trial court jurisdiction over the parties and not to charge the defendants with a liability or to restrain or compel by them the performance of any act. p. 550.

7. WILLS.—*Contest.*—*Scope and Nature of Action.*—A will contest is not in the proper sense a suit against an individual but constitutes an attack on the instrument in question for the purpose of determining who is entitled to the estate of the decedent, it being a proceeding *in rem*, and an adjudication that an alleged will is invalid does not operate to divest those named therein as beneficiaries of any rights, since none are conferred on them by a void instrument. p. 550.

8. STATES.—*Actions Against.—Will Contest.*—In the absence of a constitutional provision that the State shall never be made a defendant in any court of law or equity, the fact that the State of Indiana, or a department thereof, was named as a beneficiary in a will, did not create an exception to the right to contest a will given by §3154 Burns 1908, §2596 R. S. 1881, so long as such beneficiary had not come into possession of its bequest, and the State might properly have been made a party defendant to a suit attacking the validity of such will. p. 550.

9. STATES.—*Actions Against.—Will Contest.—Statute.*—The Act of 1911 (§3154 Burns 1914, Acts 1911 p. 325), providing that any person might contest the validity of a will within three years after it is offered for probate, and that, where the State of Indiana or any officer or any department thereof on its behalf is made a beneficiary, the State may be made a party defendant to such action, as applied to the will of one who died in 1909 bequeathing the greater portion of his estate to the "Indiana Board of State Charities," conferred no additional right of action on any one, and such will was subject to contest under the law then existing, and, in the absence of the special provision on the subject, the State not having come into possession of its bequest might properly have been made a party defendant through service of summons on the Governor and Attorney-General. p. 551.

10. APPEAL.—*Review.—Instructions.—Invited Error.*—An appellant cannot complain of an inconsistency in instructions caused by instructions given at his request and presenting a theory different from that contained in other instructions given which state the law correctly. p. 551.

11. APPEAL.—*Review.—Instructions.—Invited Error.*—An appellant cannot read into a proper instruction a statement of law erroneously contained in a charge which has been given at his request, and then seek to predicate error on the inconsistency in instructions caused thereby. p. 551.

12. APPEAL.—*Review.—Consideration of Record.*—Although the appellate court will not search a record for errors not presented by appellant in order to discover ground for reversal, neither will it ignore points disclosed by the record which will prevent a reversal even though they are not pointed out by appellee in his brief. p. 552.

13. CONTRACTS.—*Validity.—Contingent Fee.—Services before Legislature.—Public Policy.*—A contract made for a lawful purpose and which requires, as an incident to its performance, that one of the parties shall render certain legitimate services before a legislative body is not rendered contrary to public policy by the further fact that compensation under the contract is made contingent on the success of the person employed in carrying out the object of the agreement, if such result is not primarily dependent on action by the legislative body. p. 552.

Hogston *v.* Bell—185 Ind. 536.

14. CONTRACTS.—*Validity.—Legality of Purpose or Consideration*—*Public Policy.*—A contract is not void as against public policy unless the contract itself requires that something be done which adversely affects the public welfare, or is forbidden by law, or its consideration is illegal or immoral. p. 554.

15. CONTRACT.—*Validity.—Manner of Performance.—Intention of Party.*—Where an agreement is capable of being performed in a legal manner, the mere fact that one party thereto intended to perform it in an illegal manner will not preclude its enforcement. p. 554.

16. CONTRACTS.—*Validity.—Manner of Performance.*—If a contract is legal and one which the parties had a right to make, it cannot be rendered invalid by the fact that in its performance one of the parties could or might employ improper means or agencies. p. 554.

17. CONTRACTS. — *Validity.* — *Instruction.* — *"Lobby" Services.* — Where, in an attorney's action on a contract to recover fees for certain professional services, the jury was instructed that if such attorney agreed, in consideration of the payment of the fees stipulated, to use his personal influence, or any sinister or corrupt means, to procure the passage of an act by the legislature, the contract was void as against public policy, a verdict for the plaintiff determined that such "lobby" services were not contemplated by the parties to the agreement, and their subsequent performance would not affect the validity of the contract. p. 555.

18. CONTRACTS. — *Evidence.* — *Presumption.* — *Burden of Proof.* — In an action on a contract, the presumption is that the contract was entered into for a valuable consideration, with honest intentions, and that it was fair and free from fraud, and the burden is on the defendant to impeach such contract and to show by a preponderance of the evidence that it was fraudulent or contrary to public policy. p. 555.

19. APPEAL.—*Review.—Evidence.—Verdict.*—Where the record contains evidence which reasonably tends to support each of the issues on which the winning party had the burden of proof, the jury's verdict determines the weight and value of that evidence and its decision thereon is not subject to review on appeal. p. 556.

20. APPEAL.—*Review.—Instructions.—Invited Error.*—In an action on a contract, plaintiff is bound by an instruction, given at his request, fixing the date from which interest should be recovered. p. 556.

21. APPEAL.—*Review.—Excessive Verdict.—Cure by Remittitur.*—In an action on contract, error in rendering an excessive judgment because of improper computation of interest may be cured by a remittitur. p. 557.

From Wells Circuit Court; *William H. Eichhorn,* Judge.

Action by Joseph E. Bell against James I. Hogston. From a judgment for plaintiff, the defendant appeals. *Affirmed conditionally.*

*Richard L. Ewbank, Owen W. Dickey* and *Sturgis & Stine,* for appellant.

*Simmons & Dailey* and *Ryan, Ruckelshaus & Ryan,* for appellee.

SPENCER, J.—This is an action to recover for services rendered by appellee in behalf of appellant pursuant to the following written contract between the parties:

"BE IT KNOWN BY THESE PRESENTS, That I, James I. Hogston do hereby employ Joseph E. Bell as one of my attorneys to assist in the matter of the contest of the last will and testament of my brother Anderson Hogston, deceased, who at the time of his death was a resident of Grant County in the State of Indiana, and I hereby agree to pay to the said Joseph E. Bell for the services to be rendered by him as such attorney, the sum of Twenty Thousand Dollars, said amount to be paid to him when the litigation in the matter of the contest of said will shall have been ended and determined and I shall have received my portion of the estate of my said brother independent of his said last will and testament. It is further understood that any expenses incurred by the said Joseph E. Bell in the matter of preparing for the trial of such contest shall be paid by him, the said sum of $20,000.00 to be in full payment of his said fee for services to be rendered, and also all expenses incurred by him.

"IN WITNESS WHEREOF, I have hereunto set my hand this 16th day of February, 1911.
                                JAMES I. HOGSTON."

In seeking to defeat a recovery under a complaint which alleges in some detail the acceptance and

full performance of the agreement on the part of appellee, appellant takes the position that said contract, although fair on its face, in fact contemplated that in carrying out its terms. appellee should render certain services which, under the circumstances, were illegal · and sufficient to avoid the entire agreement as against public policy. In considering this contention it is important to note briefly the circumstances surrounding the will contest referred to in the above contract. Anderson Hogston, the testator, died. in the year 1909, leaving an estate of considerable value. In his will he sought to bequeath the greater portion of his property to the "Indiana Board of State Charities" with instructions to "apply the same to such charitable purposes as to such board may appear best within the purpose and scope for which it was created by the State." Appellant thereafter instituted an action in the Grant Circuit Court to contest said will on the ground that the testator was of unsound mind at the time of its execution, but the court held, on demurrer to a plea in abatement, that as a department of the State was a beneficiary under the will, and a necessary party defendant, the action could not be maintained without its consent, and it was subsequently dismissed. Meanwhile appellant had introduced in the general assembly of 1911 a bill for a law which should authorize the contest of a will in which the State, or an officer or department thereof, was named as a beneficiary. This bill had passed the House and was pending in the Senate of the legislature at the time the contract in suit was executed. It subsequently became a law (§3154 Burns 1914, Acts 1911 p. 325) and under its provisions suit was brought in the Marion Superior Court by appellee and other attorneys representing appellant, and a

trial had, which resulted in a verdict setting aside the alleged will of Anderson Hogston and left appellant as the owner of decedent's property as his sole heir at law.

The position taken by appellant in asserting that the contract in question is invalid will best appear from a consideration of instruction No. 12 given to the jury by the trial court at appellee's request. This instruction follows: "If you find from the evidence that the contract mentioned in the complaint required the plaintiff to draft a bill or amendment to a bill and to cause the same to be presented to the legislature for enactment into a law, and that the plaintiff did draft such bill or an amendment to a bill, and such bill was presented to the legislature and enacted into a law, and that such contract also required the plaintiff to go before a proper committee of the legislature and advocate a favorable report and the enactment of such a bill into a law, and that the plaintiff performed such services openly and honestly, and that by virtue of such law the superior court of Marion county, Indiana, was given jurisdiction to try and determine the validity of the will of Anderson Hogston, deceased, and that an action to contest said will was instituted in the superior court of Marion county and that a trial was had of such cause on its merits, and said will was set aside and held and adjudged null and void, and that all of the property of the estate of Anderson Hogston was received and accepted by the said defendant, then I instruct you that the said contract mentioned in the complaint and the said services so rendered by said plaintiff were not against public policy and were not illegal."

The principal objection urged against this instruction is that, as applied to the contract in suit it authorizes the recovery of a contingent fee for

services rendered in obtaining the passage of legislation. There can be no doubt that the law is well settled in this and in other jurisdictions that,

1. while contracts for the payment of fixed fees for legitimate professional services rendered before legislative bodies are valid, yet, when the fees are made contingent on success in obtaining the desired results, the contract becomes so tainted with illegality as to render it void. *Elkhart County Lodge* v. *Crary* (1884), 98 Ind. 238, 244, 49 Am. Rep. 746; *Coquillard* v. *Bearss* (1863), 21 Ind. 479, 83 Am. Dec. 362; *Trist* v. *Child* (1874), 21 Wall. (U. S.) 441, 22 L. Ed. 623; *Marshall* v. *Baltimore, etc., R. Co.* (1853), 16 How. (U. S.) 314, 14 L. Ed. 953; *Wood* v. *McCann* (1838), 6 Dana (Ky.) 366.

This rule is based on the ground that, when compensation is directly or indirectly contingent on success before the legislative body, it must necessarily encourage and lead to the use of improper means and the exercise of undue influence. As said in the case of *Elkhart County Lodge* v. *Crary*, *supra*, at page 242: "It is not necessary that actual fraud should be shown, for a contract which tends to the injury of the public service is void, although the parties entered into it honestly and proceeded under it in good faith. The courts do not inquire into the motives of the parties in the particular case to ascertain whether they were corrupt or not, but stop when it is ascertained that the contract is one which is opposed to public policy. Nor is it necessary to show that any evil was in fact done by or through the contract. The purpose of the rule is to prevent persons from assuming a position where selfish motives may impel them to sacrifice the public good to private benefit." See, also, *Noble* v. *Davison* (1911), 177 Ind. 19, 28, 96 N. E. 325; 6 R. C. L. 735, and cases cited.

But it must be noted that: "Without minimizing the importance of the doctrine that contracts should not be enforced if they contravene public policy, many courts have cautioned against recklessness in condemning contracts as being in violation of public policy. Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well established rule of law. Other courts have approved the remark of an English judge that public policy is an unruly horse astride of which one may be carried into unknown paths. Considerations such as these have led to the statement that the power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." 6 R. C. L. 710. For similar expressions of the rule last stated, see *Corns* v. *Clouser* (1894), 137 Ind. 201, 204, 36 N. E. 848; *State* v. *Johnson, Admr.* (1875), 52 Ind. 197, 211; *Burley Tobacco Society* v. *Gillaspy* (1912), 51 Ind. App. 583, 591, 100 N. E. 89; *Richmond* v. *Dubuque, etc., R. Co.* (1868), 26 Iowa 191; *Cole* v. *Brown-Hurley Co.* (1908), 139 Iowa 487, 117 N. W. 746, 18 L. R. A. (N. S.) 1161, 16 Ann. Cas. 846. As was said in the case last cited, at page 490 of the opinion: "No court should hesitate to declare void any agreement or contract to corrupt or improperly influence the official conduct of any public servant, but it is an equally sound principle which leads courts to declare that before applying such remedy,

and permitting one who has received a valuable consideration for a promise fair upon its face to escape its performance by pleading the invalidity of his own agreement, such fatal defect therein must be so clear as to be free from doubt. * * * So long as the corrupting or impolitic character of the agreement is not so clear as to be readily apparent to the intelligent and impartial mind, the just principles of law, which hold every man to a fair and full performance of his contract, ought not be made to yield to any doubtful construction of that somewhat variable and altogether undefined thing which we call public policy. While protecting the interests of the public, the rights and interests of individuals are not to be unnecessarily sacrificed.''

It is apparent that under the contract in question payment of the fee therein provided for was not in terms made to depend on the passage of the legislation referred to in instruction No. 12, or any other legislation, but on the successful termination of the will contest, and counsel for appellee assert that this fact is sufficient to take said contract out of the inhibition of the rule relied on by appellant. No authority has been brought to our attention which challenges the position thus taken by counsel and unless this case falls within the spirit of that rule it is certain that to deny their contention will require us to extend its application. Conceding that no reason exists for relaxing the rule already announced (*Noble* v. *Davison, supra*), it is no more certain that we are justified in extending the same.

What the public policy of a state is must be determined from a consideration of its constitution, its statutes, the practice of its officers in the course of administration and the decisions of its court of last resort. Of these various sources it has been said that: "The immediate

representatives of the people in legislature assembled would seem to be the fairest exponents of what public policy requires, as being most familiar with the habits and fashions of the day, and with the actual condition of commerce and trade, their consequent wants and weaknesses; that legislation is least objectionable, because it operates prospectively, as a guide in future negotiations, and does not, like a judgment of a court, annul a contract already concluded." *McNamara* v. *Gargett* (1888), 68 Mich. 454, 460, 36 N. W. 218, 221, 13 Am. St. 355. Legislative enactments are of value also in that they serve frequently to clothe in express terms a rule of law, the existence and spirit of which have already been recognized in judicial decisions which involve varying circumstances, and thus determine the extent of its application.

With these thoughts in mind it is proper to consider the act of the general assembly of 1915 which concerns the regulation of lobbying (Acts 1915 p. 5), not as controlling in the case at bar, but as of value in determining the public policy of the State with reference to contracts such as the one now under consideration. In that act the general assembly, after authorizing the employment of legislative counsel and agents, and providing for their registration and reports, expressly declared that: "No person shall be employed as legislative counsel or agent for a compensation dependent upon the passage, amendment or defeat of any proposed legislation or amendment thereof or upon any other contingency connected with the action of the general assembly or of either house, or of any committee thereof." §4, *supra*. It is manifest that in thus enacting into statutory law the rule already recognized, viz., that compensation for services before legislative bodies should not be

contingent on the success of such services, the
legislature interpreted said rule as prohibiting on
that ground only those contracts in which com-
pensation is made to depend, directly or indirectly
on a contingency connected with the action of the
legislative body itself, or of a division or branch of
the same.

Assuming in this case that the desired legislation,
although expedient, was not necessary, and assum-
ing also that appellee's efforts to obtain the same
were unsuccessful, could he be denied a recovery
under the contract if, by reason of his further
efforts, a verdict was secured which determined the
invalidity of the will and brought to appellant the
estate which he sought? Clearly not. In this con-
nection, however, it is asserted that because the
court told the jury in instruction No. 29, given at
the request of appellant, that at the time the con-
tract at bar was entered into there was no existing
law under which the will of Anderson Hogston could
be contested, it thus bound the jury to the fact that
the parties contemplated such condition of the law
in executing their agreement; that said fact must
now be considered in determining the validity of
the contract under instruction No. 12 and is suffi-
cient to show that although the ultimate contin-
gency may have been the successful termination of
the will contest, nevertheless it rested on a primary
and essential contingency—the passage of legisla-
tion—which renders the contract void. This as-
sertion is based on the theory that every person is
presumed to know the law and to make it a part of
his contracts. The rule is more properly stated that
every person is charged with knowledge of the
4.    law, and it must be conceded that, except so
far as modified by the terms of the agree-
ment, the existing statutes and principles of law

applicable to the subject-matter of the transaction become part of a contract, and must be read into it.  *Howard* v. *Adkins* (1906), 167 Ind. 184, 190, 78 N. E. 665; *Metropolitan Life Ins. Co.* v. *Johnson* (1911), 49 Ind. App. 233, 241, 94 N. E. 785.

Assuming, without deciding, that these authorities may, under some circumstances, support the contention made by appellant, it is apparent that, as applied to the case at bar, they presuppose that instruction No. 29 contains a correct statement of the law.   That instruction told the jury that: "After the death of Anderson Hogston, and before March 3rd, 1911, there was no law under which a suit could be maintained in the courts of Indiana to contest any will in which the state of Indiana, or any departments of the state government, were beneficiaries under and by the provisions of such will, because in such contest all the beneficiaries named therein must be made defendants in the action and sued therein, and the state of Indiana cannot be sued in its own courts, without its consent first being obtained so to do."

It is true that the State, which is recognized as a sovereign, can not be sued in its own courts, or in any other, without its consent. *State* v. *Mutual* 5.   *Life Ins. Co.* (1910), 175 Ind. 59, 71, 93 N. E. 213, 42 L. R. A. (N. S.) 256; *Shoemaker* v. *Board, etc.* (1871), 36 Ind. 175, 186.   Furthermore, as is pointed out in the case last cited, where suit can not be brought directly, the same result may not be reached indirectly by suing an officer, department or agent of the State, as nominal defendant, in an action which affects actual rights of the State in certain property.   On the other hand, the mere fact that the State claims an interest in the subject-matter of a suit does not necessarily

render such action a suit against the sovereign power. The decision in *Gordon* v. *Weaver* (1899), (Tenn. Ch. App.) 53 S. W. 740,, is illustrative of this statement. In that case it appears that during proceedings previously had for the purpose of winding up the Bank of Tennessee, certain lands came into the possession of the receiver for the bank and were sold by him to one of the complainants in that case. The purchaser was thereafter evicted from a portion of said lands by paramount title and brought suit against the receiver to recover the money paid by him into the general trust fund. The State of Tennessee had a claim against the fund for money due it from the bank and the contention was made that this action was therefore a suit against the state. In denying that contention the Tennessee Court of Chancery Appeals said: "It is manifest * * * that the state is entitled to the assets of the bank by virtue of having paid its note holders—its preferred creditors—their demands, which exceeded the value of its assets. But this means, and can mean only, we think, that it is entitled only to what rightfully belonged to or constituted a valid part of its assets. If its receiver got into his hands a fund or property that in law or equity he ought not to have received, it was no legal part of its fund for distribution, and the party from whom it was wrongfully obtained, nothing else appearing, had the right to recover it back. In such a case, the wrongful fund, or its resultant, being still in the hands of the trustee, receiver, or representative of the bank, or in the registry of the court, whose officer the receiver is, is in no legal sense in the possession of the state, and it lies not in its mouth, nor in that of any one else, to say that the party rightfully entitled to the fund shall not recover it. In the case put it is not the case of a suit against

Hogston *v.* Bell—185 Ind. 536.

the state or its officers to recover a fund in its possession, or to which it is entitled; it is rather a contest for a part of a trust fund being administered in a court of equity in a case in which the state and others are interested. The question therefore is, who is entitled to the fund? The state in such case stands on the same footing as any other litigant, and its rights are determined by the same rules that govern any other litigant." Similar reasoning is applicable in a proceeding to contest a will under which the State, or a department of the state government, is made a beneficiary, particularly where the estate of the testator is still in process of administration and the legacies have not been paid. Although the law provided that in such a proceeding "the executor and all other persons beneficially interested therein shall be made defendants thereto" (§3154 Burns 1908, §2596 R. S. 1881), the purpose of that provision was to confer on the trial court jurisdiction over the parties and not to charge the defendants with a liability or to restrain or compel the performance by them of any act. A will contest is not in the proper sense a suit against an individual but constitutes an attack on the instrument in question for the purpose of determining who is entitled to the estate of the decedent. It is a proceeding *in rem* (40 Cyc 1224), and an adjudication that an alleged will is invalid does not operate to divest those named therein as beneficiaries of any rights, for the reason that none are conferred on them by a void instrument.

We are not to be understood as announcing any exception to the rule that a state may not be sued without its consent but, in the absence from our Constitution of the provision sometimes found—that the State "shall never be made a defendant in any court of law or equity" (Const.

Ill. Art. 4, §26)—we do hold that the fact that the State of Indiana, or a department thereof, was named as beneficiary in a will, did not create any exception to the right of contest given by §3154 Burns 1908, *supra*, so long as such beneficiary had not come into possession of its bequest.

In passing the act of March 4, 1911 (Acts 1911 p. 325, *supra*), the legislature may have enlarged the scope of inquiry in such a proceeding, a question we do not decide, and it is certain that it made new provision as to venue and process, but, as applied to the will of Anderson Hogston, it conferred no additional right of action on any one. That will was subject to contest in Grant county under the existing law, and, in the absence of the special provision on the subject, the State might properly have been made a party defendant through service of summons on the Governor and the Attorney-General. *Huger v. South Carolina* (1796), 3 U. S. (3 Dall.) 339, 1 L. Ed. 627; *Grayson v. Virginia* (1796), 3 U. S. (3 Dall.) 320, 1 L. Ed. 619; *Commonwealth v. Boston & Maine Railroad* (1849), 57 Mass. (3 Cush.) 25, 47; *State of Texas v. Steele* (1882), 57 Tex. 200, 204. It follows, then, that instruction No. 29 contains an erroneous statement of law and can not control the interpretation of instruction No. 12. It has been held that an appellant cannot complain of an inconsistency in instructions which is caused by instructions given at his request and presenting a theory different from that contained in other instructions given, which state the law correctly. *Indianapolis Traction, etc., Co. v. Kidd* (1906), 167 Ind. 402, 413, 79 N. E. 347, 7 L. R. A. (N. S.) 143, 10 Ann. Cas. 942; *Blanchard v. Jones* (1885), 101 Ind. 542, 550.

The same rule is applicable where an appellant seeks to read into a proper instruction a statement of law erroneously contained in a

charge which has been given at his request. Although this court will not search a record for errors not presented by appellant in order to discover ground for reversal, neither will it ignore points disclosed by the record which will prevent a reversal, even though they are not pointed out by appellee in his brief. *Kraus v. Lehman* (1907), 170 Ind. 408, 414, 83 N. E. 714, 84 N. E. 769, 15 Ann. Cas. 849; *State v. John* (1907), 170 Ind. 233, 238, 84 N. E. 1.

It is our conclusion that a contract made for a lawful purpose and which requires, as an incident to its performance, that one of the parties shall render certain legitimate services before a legislative body, is not rendered contrary to public policy by the further fact that compensation under the contract is made contingent on the success of the person employed in carrying out the object of the agreement, if such result is not primarily dependent on action by the legislative body. That this distinction was recognized by the trial court in giving instruction No. 12 is apparent from the fact that it also gave instruction No. 22, tendered by appellant, which told the jury that: "A contract whereby one is employed to perform services in procuring the passage of an act by the legislature which leaves the payment of the compensation for such services contingent upon the passage of such legislative act, is void as being against public policy. This is true, regardless of whether corrupt practices are resorted to or contemplated by the parties to the contract or not. So, in this case, if you believe from a preponderance of the evidence that the services which the plaintiff, Joseph E. Bell, agreed to perform, either in whole or in part, in consideration for the compensation of twenty thousand dollars provided for in the contract declared upon in

the complaint, was the procuring of the passage of an act of the general assembly of the state of Indiana, then said contract is void, as being against public policy and your verdict should be for the defendant." The one instruction told the jury that a contract which contemplates the performance of legitimate services before a legislative body is void in law if compensation therefor is made to depend on the attainment of the desired result, while the other properly authorized a recovery for such services if the contingency which governed compensation did not rest, directly or indirectly, on the passage, amendment or defeat of legislation. Our conclusions above announced serve to sustain instruction No. 12 and to dispose of similar objections urged against others of the instructions given.

Attack is also made on instruction No. 26 given by the court at the request of appellee and which reads as follows: "The contract sued on is legal upon its face and it cannot be held to be illegal unless you find by a preponderance of the evidence that both parties to it intended at the time it was entered into that the same should contain other stipulations and agreements that would make it illegal. The illegal intent that would defeat this contract must be the common intent of both parties, and if either the plaintiff or defendant had a lawful and legitimate purpose in making the contract or if either supposed the other to have a legitimate purpose and has contracted with him upon that supposition, his right to recover upon the contract after performing all of its requirements, must be clear."

The objections urged against this instruction are: (1) That it makes the intent of the parties at the time the contract was executed the test of the legality of the instrument, and (2) that it permits

a recovery for services involving illegal practices in obtaining the passage of legislation. The first of these objections may be disposed of by reference to the authorities which hold: (1) That a contract is not void as against public policy unless the contract itself requires that something be done which adversely affects the public welfare, or is forbidden by law, or its consideration is illegal or immoral. *Callicott* v. *Allen* (1903), 31 Ind. App. 561, 67 N. E. 196; *Murray* v. *White* (1910), 42 Mont. 423, 113 Pac. 754, Ann. Cas. 1912A 1297. (2) That, where an agreement is capable of being performed in a legal manner, the mere fact that one party thereto intended to perform it in an illegal manner will not preclude its enforcement. *Whitesides* v. *Hunt* (1884), 97 Ind. 191, 194, 49 Am. Rep. 441; *Gregory* v. *Wendell* (1879), 40 Mich. 432, 439; *Kottwitz* v. *Alexander's exrs.* (1869), 34 Tex. 689, 708; *Bartlett* v. *Smith* (1882), 13 Fed. 263, 270; *Williams* v. *Tiedemann* (1878), 6 Mo. App. 269, 275. (3) That if a contract sued on is legal in its nature, and one which the parties had a right to make, it can not be rendered invalid by the fact that in its performance one of the parties could or might employ improper means or agencies. *Gregory* v. *Wendell, supra; Cole* v. *Brown-Hurley Hdw. Co., supra.*

As to the second objection it is necessary only to quote from the decision in *Russell* v. *Burton* (1867), 66 Barb. (N. Y.) 539, certain language which, as applied to the verdict of the jury in this case, is applicable to the instruction under consideration. The plaintiff in that case rendered certain "lobby" services in carrying out a contract of employment with the defendant and it was sought to avoid a recovery on that ground. The Supreme Court of

New York said, at page 547 of the opinion: "These services were doubtless 'lobby services'. But were they in contemplation of the parties, when the contract was made? Were they services beyond and outside the contract—gratuitous? From the fact that they were performed in furtherance of the general object of the contract, it would not be unfair, perhaps, to infer that the parties understood and expected that they were covered by its provisions; and had the referee so found, and held the contract immoral and invalid in consequence, his decision would doubtless have been allowed to stand. But this question was for him on all the evidence, and he has found, in effect, that none but legal services were stipulated for or contemplated by the parties."

So, in the case at bar, the jury was expressly instructed at the request of appellant that: If appellee, "as a part of the services which he agreed to perform in consideration of the payment to him of the sum of twenty thousand dollars, provided for in the contract set out in the complaint, agreed to use his personal influence with any of the members or officers of the general assembly, or any sinister or corrupt means, to procure the passage of an act by such general assembly, then the contract set out in the complaint is void as being against public policy, and your verdict should be for the defendant." The verdict of the jury determines that such services, if any, were not contemplated by the agreement of the parties and their subsequent performance would not affect the validity of the contract.

In instruction No. 23, given at the request of appellee and now challenged, the court told the jury that: "The presumption is that the contract set out and mentioned in the complaint was entered into for a valuable consideration, and with honest intentions, by the plaintiff and defendant, and without fraud and that the contract

was fair. I further instruct you that the burden
of proof is upon the defendant to impeach such con-
tract, and if the defendant has failed to show by a
preponderance of the evidence that said contract
was fraudulent or contrary to public policy, then
you should find that said contract is free from fraud
and is a legal and binding contract." This in-
struction properly states the law. *Conner & Hare
v. Robertson* (1885), 37 La. Ann. 814, 55 Am. Rep.
521; *Pixley v. Boynton* (1875), 79 Ill. 351; *Williams
v. Tiedemann, supra.*

It is also insisted that the verdict in this case is
not sustained by the evidence. As we have recently
noted in the case of *Portland, etc., Mach. Co.
v. Gibson* (1915), 184 Ind. 342, 111 N. E. 184:
"It may readily be understood how a party
may, in good faith, believe that testimony given by
his adversary on a particular issue involved has no
probative force, but where, as in this case, it is
apparent that the record contains evidence which
reasonably tends to support each of the issues on
which the winning party had the burden of proof
the verdict of the jury determines the weight and
value of that evidence and its decision thereon is
not subject to review on appeal."

Some questions are raised as to other instructions
given and refused, and objection is made to certain
rulings of the trial court relative to the admission
of evidence. Most of these questions are disposed
of through our conclusions above reached and an
examination of the others does not show them to be
of controlling importance.

Finally, it is insisted that the amount of the judg-
ment rendered is too large. The jury found that
appellee was entitled to recover the sum of
$20,000, with interest thereon at the rate of
six per cent. per annum from July 3, 1913,
the date fixed in the complaint, to May 26, 1914,

the date of the verdict.   In instruction No. 25
given at the request of appellee the date of demand,
August 7, 1913, is taken as the day from which
interest should be computed and appellee is bound
by that instruction.   The interest thus computed
from August 7, 1913, to May 26, 1914, is $963.33
and the amount of the judgment therefore should
be $20,963.33.   The judgment rendered is excessive
in the sum of $113.33 but this error may be
21. cured by a remittitur.   *First Nat. Bank* v.
*Peck* (1913), 180 Ind. 649, 660, 103 N. E. 643.

If appellee, within thirty days, shall remit such
excess, the judgment will be affirmed; otherwise the
same will be reversed for such error.

June 6, 1916.   Remittitur having been filed as re-
quired, the judgment is affirmed as of the date of
the opinion.   Cox, C. J.

### DISSENTING OPINION.

MORRIS, J.—I agree with the majority opinion in
the conclusion that the act of 1911, *supra,* did not
affect appellant's right to contest his brother's will,
except as to the venue of the action.   Assuming,
without deciding, that the state board of charities,
is either authorized to accept a devise or execute a
charitable trust, it does not follow that the will con-
test in question constituted an action against the
State in its sovereign capacity.   *Tindal* v. *Wesley*
(1897), 167 U. S. 204, 17 Sup. Ct. 770, 42 L. Ed.
137.   But, were it such a suit, then it must be con-
ceded that the State of Indiana has authorized such
action against itself, for the statute (§3154 Burns
1908, *supra*) expressly requires all beneficiaries
to be made parties to such contest.   The right to
make a will is not conferred upon persons of unsound
mind.   §3112 Burns 1914, §2556 R. S. 1881.   The
complaint in the contest alleged the invalidity of

the will because the testator was of unsound mind. In such event the purported will did not affect the right of the heir to take by descent. *Crawfordsville Trust Co.* v. *Ramsey* (1912), 178 Ind. 258, 271, 98 N. E. 177; *Tindal* v. *Wesley, supra.* If the state is a beneficiary under an invalid will it may be made a party in the contest thereof, within the three-year limit for such actions, regardless of whether it has taken possession of the thing purported to be devised or bequeathed to it.

I can not concur, however, in the decision of the majority that no reversible error was committed in the exclusion of evidence offered by appellant. Illegality of consideration was not the only defense relied on. The third paragraph of answer alleges that the execution of the contract by appellant was procured by means of a fraudulent conspiracy between appellee and appellant's previously employed attorneys at Marion, William J. Houck and Roscoe A. Hevelin. The fourth paragraph of answer alleges, among other things, that appellee secured the execution of the contract by appellant through alleged fraudulent acts of said Houck and Hevelin, while they were acting as, agents for appellee.

The contract was signed by appellant in the evening, on February 16, 1911. Appellant was living in Grant county, while appellee resided in Indianapolis. They were strangers to each other, and had theretofore had no correspondence. As attorneys for appellant, Houck and Hevelin had commenced a suit in Grant county to contest the will, but the trial court had overruled their demurrer to a plea in abatement. Appellee testified that Mr. Houck came to Indianapolis and informed him about the status of the contest suit, and also that a bill had been introduced in the lower house of the general

assembly (then in session) to authorize the State to be sued in will contests, but that the passage of the bill was doubtful because of opposition in the senate.    Appellee further testified that Houck stated to him that appellant desired to employ him to assist in the will contest.   Appellee replied that he would consider the matter, and, if he decided to accept employment, he would forward to Houck a written proposition stating terms.   Two or three days later appellee prepared the contract sued on, which contained a blank for acknowledgment before a notary, and forwarded it to Houck by mail.   The proposition forwarded was in the possession of Houck and Hevelin for about a week prior to February 16, 1911, when appellant signed it in Hevelin's office.   It was acknowledged before a notary in another office on the "opposite side of the square."

The trial court refused appellant's offer to prove by himself, that he never gave Mr. Houck any authority to negotiate with appellee for the latter's employment.   It also refused appellant the privilege of testifying that when he signed the contract in Hevelin's office the latter said to him: "You must not acknowledge it before the notary in my office for the reason that I don't know what trouble may come from this contract, and you must take it out and acknowledge it before some other notary and then return the contract to me."   The trial court also excluded the offered evidence of appellant that on the day the contract was signed by him, and before he signed it, attorney Houck said:   "You must sign the contract today, and it must be in Indianapolis to-morrow morning by 9 o'clock, or the bill is killed, or will be killed."   A son of appellant testified that he heard a conversation between his father and appellee, in the summer of 1913,

when appellee demanded payment of the $20,000 provided for in the contract; that on that occasion appellee said that Houck had employed him to put the bill through the legislature, and that he did not think that it would have passed without his help. Appellee denied having made such statement. It is conceded that appellee performed services in relation to the legislative measure. Whether these services were gratuitous and collateral to the employment was the main question on the issue of illegal consideration.

I am of the opinion that Hevelin's statement about the notary, when the contract was signed, was admissible as a part of the *res gestae*. I fail to see why, under the issues, appellant should not have been permitted to testify that he never authorized Houck to negotiate with appellee regarding the latter's employment. An attorney employed to prosecute an action is not thereby authorized to employ other counsel for the client. I am further of the opinion that what was said by Houck to induce appellant to sign the proposed contract was admissible. For the purpose of procuring appellant's signature, it must be conceded that Houck was appellee's agent. The written proposition was sent to Houck for appellant's signature and, when signed, was delivered to appellee by Houck or Hevelin. I think the exclusion constituted reversible error. *Heller* v. *Crawford* (1871), 37 Ind. 279; 10 R. C. L. 173. The fact that the written contract on its face makes no reference to legislative services does not preclude parol evidence that such services were contemplated in the employment. On the evidence admitted the jury found for appellee. Whether the finding would have been the same, had the excluded evidence been admitted, it is impos-

sible to say, and I think a new trial should be award-
ed because of such exclusion.

NOTE.—Reported in 112 N. E. 883. Validity of contracts for con-
tingent compensation in procuring legislation, 6 Ann. Cas. 218; Ann.
Cas. 1916E 948; 30 L. R. A. 737; 4 L. R. A. (N. S.) 213; 9 Cyc 486,
488. See under (5) 36 Cyc 918; 108 Am. St. 831; (8) 40 Cyc 1240;
(14) 9 Cyc 483; (15) 9 Cyc 570.